John G. Grobark and John C. Grobark, Plaintiffs-Appellants, v. Addo Machine Company, Inc., Defendant-Appellee.

**Gen. No. 47,317.**

First District, Third Division.

May 7, 1958.

Released for publication July 18, 1958.

Richton & Cook, of Chicago (John A. Cook, of counsel) for plaintiffs-appellants.

Chapman and Cutler, of Chicago (Keehn Landis, of counsel) for appellees.

PRESIDING JUSTICE BURKE delivered the opinion of the court.

John G. Grobark and John C. Grobark filed their complaint at law in the Superior Court of Cook county against Addo Machine Company, Inc., hereinafter called the defendant, and certain individuals, and asked judgment for $50,000. Personal service was obtained on the defendant at New York City by the Sheriff of New York county. The plaintiffs assert jurisdiction over the defendant under sections 16 and 17 of the Civil Practice Act [Ill. Rev. Stats. 1957, ch. 110, §§ 16, 17] as a case arising out of the transaction of business within the state of Illinois. The defendant by a special appearance objected to the jurisdiction of the court on the grounds that it had not transacted business within the meaning of section 17, and that the matters complained of took place prior to January 1, 1956, the effective date of the amendatory act. The individual defendants are not parties to this appeal. The court considered the complaint, special appearance and certain affidavits. The plaintiffs appeal from an order quashing the service of the summons.

In this court the defendant does not argue that the submission to jurisdiction cannot be construed retroactively, apparently recognizing that Nelson v. Miller, 11 Ill.2d 378, decided that point adversely to its contention. We therefore turn to a consideration of the proposition advanced by the plaintiffs that section 17 authorizes jurisdiction of the cause of action as one which arises from the transaction of business in Illinois. The defendant insists that it did not submit to the jurisdiction of the courts of this state within the meaning of that section.

The complaint describes the general office machine business conducted by the plaintiffs at Chicago. From

11

1939 to 1953 the plaintiffs purchased Addo-X adding machines from defendant for resale. They developed a list of customers and dealers which by the year 1953 had a considerable trade value. During 1951–52, because of the volume of plaintiffs' business in defendant's adding machines, defendant made various efforts to learn the names of plaintiffs' customers and dealers. Plaintiffs allege that on or before May 19, 1953, they entered into a "certain contract" with defendant under the terms of which plaintiffs were appointed exclusive distributors of the Addo adding machine for the "Greater Chicago Trading Area," which area is "substantially entirely in the State of Illinois." The alleged contract consists of a letter dated May 19, 1953, sent by the defendant from New York City to plaintiffs at Chicago. Under the terms of the letter which plaintiffs call a contract they were given the right to purchase the machines at a stated discount from list with an additional discount to provide for dealer development. The letter provided for cancellation by either party on three months' notice. In the event of cancellation plaintiffs were given the privilege of continuing the purchase of the machines on a dealer basis for a reasonable time. On July 24, 1953, plaintiffs gave to the defendant their list of customers and dealers after assurance by defendant that the list, if delivered, would be with full protection of plaintiffs' rights therein. Plaintiffs entered into various sales efforts in and about the promotion and sale of defendant's product in the Greater Chicago Trading Area. A number of valuable accounts were obtained.

The complaint alleges the entry of the individual defendants into the business picture as a dealer for plaintiffs. Thereafter the individual defendants negotiated directly with the defendant and brought about the termination of plaintiffs' "contract of dis-

12

tributorship." On July 1, 1955, defendant advised the plaintiffs that their distributorship would be cancelled effective October 1, 1955. During the three months period of cancellation defendant used plaintiffs' dealers and customers list for the announcement of the appointment of the individual defendants as its distributors in certain midwestern states, including the Greater Chicago Trading Area. Defendant also sent a general letter of the appointment of the individual defendants effective August 1, 1955. The complaint also states that despite the fact that "under the terms of their contract" plaintiffs had the right to purchase directly from the factory, the defendant permitted the individual defendants to interfere with the "contractual arrangement" between plaintiffs and a customer by inducing the customer to believe that the individual defendants were the only authorized factory dealers; and that during the three month termination period the defendant submitted plaintiffs' trade secrets, consisting of its customers and dealers list, to the individual defendants and thereafter refused to protect these secrets in any way against wrongful use by these defendants, although in complete control of the product which was to be sold by the individual defendants. The complaint further states that "under the terms of the contract" plaintiffs were to be given the privilege of purchasing machines on a dealer basis for a reasonable period of time directly from the factory, and that the defendant, following October 1, 1955, "delayed answering and failed to fill the orders of the plaintiffs," and finally on January 20, 1956, refused to fill any further orders for them.

The record shows that the defendant is a corporation organized pursuant to the laws of the state of New York and domiciled in that state. It is not licensed to do business within the state of Illinois.

13

It manufactures adding machines and other business machines outside of Illinois and ships these machines to purchasers throughout the United States. It does not and has not at any time maintained any offices in Illinois, nor employed any officers, agents or employees or other persons within the state. From May 19, 1953, defendant, pursuant to the letter of that date addressed to plaintiffs, began to sell its machines to plaintiffs at a distributor discount rate. The sales were consummated when plaintiffs placed orders with the defendant in New York, and defendant accepted the orders, delivering its product to independent carriers in New York. On or about July 1, 1955, defendant advised plaintiffs that beginning October 1, 1955, they would no longer be exclusive distributors of defendant's products in the Greater Chicago Trading Area, and after the latter date defendant sold its machines at a distributor level to the individual defendants and to other distributors. Defendant did not at any time and does not own any interest in any corporation, partnership or individual distributing its products in Illinois and did not at any time and does not have the right to exercise any control over the distributors, the relation between defendant and distributor being that of seller and purchaser. After October 1, 1955, the defendant continued to sell equipment to plaintiffs on a dealer price level until January 1, 1956, when it declined to accept any further orders from plaintiffs.

■ The letter of May 19, 1953, which plaintiff characterizes as a "contract" sets forth the seller-purchaser relationship. Nothing was required of plaintiffs in the way of performance in Illinois. The letter did not require them to order machines from the defendant, to build a dealer organization or to do any other act. There was no "performance" in Illinois

14

which defendant could have required of the plaintiffs. The defendant merely accepted the orders plaintiffs chose to submit and then shipped the goods so ordered. In our opinion the letter of May 19, 1953, did not constitute a contract. It contained no provision binding plaintiffs to take any machines whatever from the defendant. They could order machines if they wished or could entirely fail to order any. The letter which plaintiffs say is a contract was unilateral and void for want of mutuality. Olson v. Whiffen, 175 Ill. App. 182; Joliet Bottling Co. v. Joliet Citizens' Brewing Co., 254 Ill. 215; Park Beverage Co. v. Goebel Brewing Co., 197 Md. 369, 79 A.2d 157.

█ Plaintiffs were not doing business in Illinois as defendant's agent. They were independent businessmen in Illinois, selling their own merchandise which had been manufactured by the defendant. They were not transacting business for the defendant in Illinois. They were transacting business for themselves. Section 17 requires that the defendant transact business within the state, not merely that products manufactured by defendant be sold within the state by other independent business organizations. In the leading case of International Shoe Co. v. Washington, 326 U. S. 310, the defendant's salesmen were employed in Washington. In Nelson v. Miller, 11 Ill.2d 378, the defendant's agent was in Illinois and his activity here gave rise to the injury for which the suit was brought. We are of the opinion that the defendant corporation did not submit to the jurisdiction of the courts of Illinois within the meaning of section 17 of the Civil Practice Act. Therefore the order of the Superior Court of Cook county is affirmed.

Order affirmed.

FRIEND and BRYANT, JJ., concur.