Leonard W. Koplin, Plaintiff-Appellant, v. Saul Lerner Co., Inc., a Corporation; Filer, Schmidt & Co., and Thomas, Haab & Botts, Defendants-Appellees.

Gen. No. 49,432.

First District, Third Division.
September 17, 1964.
Rehearing denied September 29, 1964.

Raynor & Mitchell, and Arthur Abraham, of Chicago, for appellant.

Lord, Bissell & Brook, of Chicago, and Giffin, Winning, Lindner & Newkirk, of Springfield (James M. Winning, of counsel), for Saul Lerner Co., Inc., appellee. Dallstream, Schiff, Hardin, Waite & Dorschel, of Chicago (Burton R. Rissman, of counsel), for Filer, Schmidt & Co., appellees.

MR. JUSTICE DEMPSEY delivered the opinion of the court.

This case was transferred here after a direct appeal had been taken to the Supreme Court. That court held that its jurisdiction could not be invoked because no constitutional question had been passed upon in the trial court. The Court's opinion (29 Ill2d 451, 194 NE 2d 304) outlined the facts and issues:

> "Summons upon the three defendants in this case was served personally in New York under sections 16 and 17 of the Civil Practice Act. (Ill Rev Stats 1961, chap 110, pars 16, 17.) The motions of two of the defendants to quash the service

of process were granted, and the plaintiff has appealed directly to this court on the ground that the validity of a statute or a construction of the constitution is involved. (Ill Rev Stats 1961, chap 110, par 75.) For reasons that will be stated we are of the opinion that this court lacks jurisdiction upon direct appeal.

"The two defendants are Saul Lerner Co., (hereafter Lerner), and Filer, Schmidt & Co., (hereafter Filer). Each of them is a dealer in puts and calls and each has its principal place of business in New York City. The complaint alleges that during the years 1959, 1960 and 1961 each defendant sold put and call options in Illinois in violation of the Illinois Statutes prohibiting gambling in securities, (Ill Rev Stats 1959, chap 38, par 328; Ill Rev Stats 1961, chap 38, par 28–1(a)(4)) and that the plaintiff is entitled to recover in this qui tam action 'three times the aggregate amount of all sums which had been paid to or won by each of said defendants' as a result of the sale and exercise of the options. (Ill Rev Stats 1959, chap 38, par 330; Ill Rev Stats 1961, chap 38, par 28–8.) The defendants' activities were alleged to constitute the transaction of business in Illinois so that under the statute the court had jurisdiction in personam over the defendants as to any causes of action arising out of such transactions. Ill Rev Stats 1961, chap 110, par 17.

"The defendants appeared specially for the sole purpose of objecting to the jurisdiction of the court. (Ill Rev Stats 1961, chap 110, par 20.) In its motion to quash the service of process each defendant contended that all essential parts of all transactions involving the sale and exercise of put and call options occurred in New York, and

99

that it did not transact any business in Illinois within the meaning of section 17 of the Civil Practice Act. (Ill Rev Stats 1961, chap 10, par 17.) The motions were supported by affidavits. Filer also asserted in its motion that if section 17 was construed to authorize jurisdiction, it would contravene the due process clause of the fourteenth amendment to the Federal constitution. The court sustained the motions and entered separate orders quashing the service of summons on each defendant."

With the constitutional question of due process eliminated from the case because of the Supreme Court's decision, the only issue to be determined is whether the two defendants submitted to the jurisdiction of the Illinois courts by doing sufficient business in Illinois to come within the provision of 17(1)(a) which is the applicable subsection of section 17: "The transaction of any business within this State."

The complaint filed in this action was, in reference to the put and call options sold in Illinois, of the most general nature. After making the allegations outlined in the Supreme Court's opinion the complaint went on to say that the defendants had advertised the options for sale in a Chicago newspaper and in the Wall Street Journal, that representatives of the defendants had been present in Illinois and had promoted the business of their respective employers during the period in question, and that the sale of option contracts and the advertisement of them constituted the transaction of business in this state.

Nowhere did the complaint specify an instance of the sale of a stock option by either of the defendants. No Illinois resident's name was given as buyer or possible buyer, no dates, no places where the purchases took place were supplied, no amounts paid or losses sustained by Illinois residents were stated; the plain-

tiff merely drew from the general allegations of his complaint the specific conclusion that Illinois residents had lost money in speculative transactions to one or both of the defendants. The plaintiff summed up his own position in paragraph 17 of his complaint when he stated:

> "That the names of each of the purchasers of said put and call option contracts, the respective dates of said contracts and of the purchase thereof, the amounts paid and lost by each of said purchasers in connection with each of said contracts, the shares of stock covered by each of said contracts and the precise dates of said option contracts and the expiration dates of each of said option contracts is unknown to the plaintiff, but is well known to the defendants and each of them will appear from the books and records of the respective defendants."

The plaintiff prayed for full and complete discovery to supply the deficiencies which were so candidly admitted in paragraph 17.

■■ The complaint was couched in such general terms that it was vulnerable to a motion to strike. No such motion was made, however, and none could have been made by the defendants without jeopardizing their special appearances. Ill Rev Stats c 110, § 20(1) (1963). A motion to strike would have admitted that the case was properly in court; the defendants could not ask the court to exercise jurisdiction over the case and at the same time deny that jurisdiction existed. Jones v. Jones, 40 Ill App2d 217, 189 NE2d 33.

Each defendant denied that it had transacted any business in Illinois within the meaning of section 17(1)(a). In an affidavit Lerner stated that its business was conducted in the City of New York, that

when someone wished to buy an option contract the person normally contacted his own broker who would in turn communicate with a New York brokerage firm. This New York firm then would get in touch with Lerner and inquire if there was such an option for sale. If the purchase was consummated it was then done by Lerner selling the option contract to the New York broker, after which Lerner had no idea where it might be sent. The affidavit stated that the contracts were bearer instruments and that Lerner was not informed of the identity or residence of the purchasers. Further, it was stated that the company had no knowledge of any direct sale to any resident of Illinois and that if such a sale had been made it was effected in New York. Lerner denied that any of its agents transacted business in the state but said that one of its employees had conducted a short course in option contracts in Chicago and that other employees had visited Chicago brokerage firms.

In its special and limited appearance and in a supporting affidavit, Filer, Schmidt, a New York partnership, filed a like challenge to jurisdiction. They disclosed that its routine operation was similar to that of Lerner. It stated that it conducted its business in New York and that its contracts were executed, paid for, delivered and performed in New York; it further stated that it neither had an office nor employees in Illinois and did not solicit business from the general public, that it had no interest in anyone in Illinois who was engaged in the put and call business and that it had no property, bank accounts or telephone listing in the state. A partner said, in the affidavit, that the firm occasionally received inquiries from Illinois brokers and that 12 residents of the state had maintained accounts with the partnership at some time during the period covered by the complaint, but that all contracts were made in New York. He ac-

102

knowledged the advertisements and stated that one of the firm's employees had been in Chicago for a period of two days and had met with the agents of six securities brokers.

The plaintiff filed two counteraffidavits. The first consisted of copies of advertisements that had appeared in the midwest edition of the Wall Street Journal on January 26, 1962. The second was that the Lerner company had organized a wholly owned subsidiary, the Saul Lerner Ill. Co., Inc., and that this subsidiary had registered in Illinois as a dealer in securities in December 1961. As to Filer, Schmidt, the affidavit was that the firm had applied in 1958 for registration in Illinois as a dealer in securities and had filed a consent to the service of process, that it had been registered in 1960 and reregistered in 1961 and 1962. Exhibits, substantiating the affidavit, were supplied.

The trial court quashed the service of summons as to each defendant and the plaintiff moved to vacate the orders. Another exhibit pertaining to Lerner and another pertaining to Filer were filed with the motion. The first was a letter sent to the Secretary of State in November 1961 by Lerner's Springfield attorneys in response to an inquiry from the Secretary concerning the application of the Saul Lerner Ill. Co., Inc., to register as a dealer in securities. The letter presented the company's plans for doing business in Illinois, the kind of business it intended to conduct and its proposed method of operating. The second exhibit was a letter sent by Filer to the Secretary of State in April 1960 in response to his request for a list of those persons in Illinois to whom the firm sold options. The letter said that the firm had hoped to do business with individuals but that none had been done, that practically all its business came from stock exchange firms, that its bills were made out to the firms and that

the firms did not divulge the names or locations of their customers.

The motion to vacate was denied. We agree with the decision of the trial court. The complaint, the affidavits and the exhibits were entirely deficient in showing business transactions in Illinois—even an isolated transaction—upon which the cause of action was purportedly based. From the complaint it is apparent that the plaintiff merely suspected that the defendants sold put and call options in Illinois—for no such sale was known to the plaintiff. A court need not determine the merits of a cause of action before ascertaining whether it has jurisdiction—it is sufficient if the allegations of the complaint would, if proved, support the action. Nelson v. Miller, 11 Ill2d 378, 143 NE2d 673 (1957). However, a court cannot assert jurisdiction without the allegation of facts which show that it has jurisdiction. Registration with the Secretary of State did not bring the defendants within section 17, nor did it vest jurisdiction in Illinois. The registrations by both defendants and the formation of the subsidiary company by Lerner indicate plans and preparations for doing business in Illinois; the advertisements indicate the desire and hope for doing business, but none of these denote that business was done. A willingness to do business and solicitation of business do not constitute the doing of business.

In International Shoe Co. v. Washington, 326 US 310, 66 S Ct 154, 90 L Ed 95 (1945), the court relaxed the standards which had long prevailed for determining when a state could, in conformity with the requirements of due process, exercise in personam jurisdiction over nonresidents. Principles were set out which have since served as guide lines for state courts and legislatures. The Supreme Court stated that it was necessary in any case of personal jurisdiction to

104

determine whether the requirements of due process had been met and one of these was that the nonresident defendant must have had "certain minimum contacts" within the state where the suit was brought in order that the "maintenance of the suit does not offend 'traditional conceptions of fair play and substantial justice.' "

The Illinois legislature took full advantage of the opportunity afforded by the liberalized concept of due process by enacting section 17, and our reviewing courts, in most cases, did likewise by liberally interpreting the new statute. Section 17 gives protection to Illinois residents damaged by the encroachment upon their rights by nonresidents; and our courts, consistent with the "minimum contacts" and "fair play and substantial justice" standards of International Shoe v. Washington, have enlarged considerably the reach of in personam jurisdiction in making foreign residents amenable to the process of our courts. Nelson v. Miller, 11 Ill2d 378, 143 NE2d 673; Kropp Forge Co. v. Jawitz, 37 Ill App2d 475, 186 NE2d 76; Gray v. American Radiator & Standard Sanitary Corp., 22 Ill2d 432, 176 NE2d 671. Illinois is not alone. A trend in the same liberal direction is discernible nationally. See: Kurland, The Supreme Court, The Due Process Clause and the In Personam Jurisdiction of State Courts, 25 U Chi L Rev 569 (1958); Currie, The Growth of the Long Arm: Eight Years of Extended Jurisdiction in Illinois, 1936 U Ill LF 533 (1964).

The liberalization, however, cannot be extended to a point where injustice is done a defendant or where the extension infringes upon the constitutional limitations of due process. It is always necessary that there be sufficient minimum contacts within the state. What constitutes such contacts depends upon the facts of each case when judged by the requirements laid down by the Supreme Court of the United States

and our own state courts. In each of the cases in which personal jurisdiction has been held valid, the plaintiff put before the court some specific act or acts out of which his complaint arose and which he averred constituted the transaction of business within the state. The court was thus enabled to appraise the acts and to judge whether they provided sufficient contacts to confer the requested jurisdiction. The two cases upon which the plaintiff relies were based on specific acts (Gray v. American Radiator & Standard Sanitary Corp., 22 Ill2d 432, 176 NE2d 761, a tort case, and McGee v. International Life Ins. Co., 355 US 220, 78 S Ct 199, a contract case). In McGee a single act was held enough to confer jurisdiction as to the consequences arising from that act. In the present case the plaintiff has not supplied one instance of either defendant entering into a business relationship with any Illinois resident. There has been no showing that a single Illinois resident suffered a loss. It has not been shown that either defendant did an act by which it "purposefully availed itself of the privilege of conducting activities within the forum State." It was held in Hanson v. Denckla, 357 US 235, 78 S Ct 1228, that some such act was essential. Instead of showing such a definite act, the plaintiff wanted the trial court to infer from the vague allegations and the general conclusions of his complaint that there were such acts, that Illinois residents had dealt with the defendants and had suffered losses. What he actually wanted was something it would have been unjust to grant. He asked the court to exercise jurisdiction over the defendants in order to determine whether any dealings took place; in other words, he asked the court to exercise in personam jurisdiction in a case where, until the jurisdiction was exercised, there were not sufficient facts before the court to determine whether or not jurisdiction existed.

■ The trial court was not willing to do this and we are not willing to order it to do so. In our opinion the requisite minimum contacts have not been shown. We believe that it would be offensive to traditional concepts of fair play and substantial justice to compel the defendants, who are not residents of this state, to appear in our courts and to furnish information possibly against their own interests, before it even becomes clear whether our courts have jurisdiction over them or that the plaintiff has a cause of action against them.

The orders of the trial court quashing the service of summons upon the defendants are affirmed.

Affirmed.

SCHWARTZ, P. J. and SULLIVAN, J., concur.