**Leonard W. Koplin, Plaintiff-Appellant, v. Thomas, Haab & Botts, Defendant-Appellee.**

**Gen. No. 50,636.**

First District, Third Division.

July 21, 1966.

Rehearing denied September 12, 1966.

Raynor & Mitchell and Arthur Abraham, of Chicago, for appellant.

Arvey, Hodes & Mantynband, of Chicago, for appellee.

MR. JUSTICE DEMPSEY delivered the opinion of the court.

This is an appeal by the plaintiff from an order granting the defendant's motion to quash service of process.

Three New York brokers, Saul Lerner Co., Inc., Filer, Schmidt & Co. and Thomas, Haab & Botts, were personally served with summons in New York City, under sections 16 and 17 of the Civil Practice Act. (Ill Rev Stats, c 110, pars 16, 17 (1961).) They were made defendants in a qui tam action for damages brought under Ill Rev Stats, ch 38, § 330 (1959) and ch 38, § 28–8 (1961). The complaint charged that during the years 1959 through 1962 the defendants were dealers in "put and call" options; that these were gambling transactions which violated the laws of Illinois prohibiting gambling in securities (Ill Rev Stats, c 38, § 328 (1959) and c 38, § 28–1(a) (4) (1961)); that the defendants transacted business in Illinois by selling such option contracts to various individuals, firms and corporations in Cook County and elsewhere in Illinois and that these purchasers lost and paid large sums of money to the defendants. It was alleged that the purchasers were entitled to sue the defendants for the amount of their losses but none of them did so, and that the plaintiff, a resident of this State, had the right, therefore, under the statutes to initiate a civil action on behalf of Cook County and himself for triple the amount of the losses.

Each defendant filed a special appearance to quash the service of summons on the ground that it was not amenable to extraterritorial service of process within the meaning of section 17 of the Civil Practice Act. The motions were granted, but the order was subsequently vacated as to Thomas, Haab & Botts, the defendant in the present case. The orders as to the other defendants were affirmed on appeal. (Koplin v. Saul Lerner Co., Inc., 52

245

Ill App2d 97, 201 NE2d 763 (1964).) While the Lerner case was pending on appeal Thomas, Haab & Botts moved to strike the complaint; its motion was denied. Two years later (after this court's decision in Koplin v. Lerner) the defendant renewed its motion to quash the service of summons. It is from the granting of this motion that the plaintiff appeals.

██ ██ Before we reach the principal issues which are: (1) whether the defendant submitted itself to the jurisdiction of the courts of Illinois by transacting business within Illinois and (2) whether section 17, if construed to authorize jurisdiction over the defendant, would violate the due process clause of the Fourteenth Amendment to the Constitution of the United States, we are faced with the plaintiff's contention that the defendant's objection to the assertion of personal jurisdiction was waived by the defendant's motion to strike the complaint. The plaintiff cites a line of cases which hold that an appearance by a defendant for any purpose other than to question the jurisdiction of the court is a general appearance, even if the defendant also challenges the court's jurisdiction, and quotes from Koplin v. Saul Lerner, supra:

> "The complaint was couched in such general terms that it was vulnerable to a motion to strike. No such motion was made, however, and none could have been made by the defendants without jeopardizing their special appearances. Ill Rev Stats, ch 110, sec 20(1) (1963). A motion to strike would have admitted that the case was properly in court; the defendants could not ask the court to exercise jurisdiction over the case and at the same time deny that jurisdiction existed. Jones v. Jones, 40 Ill App2d 217, 189 NE2d 33."

Neither the cited cases nor the quoted language supports the contention; both assume a situation wherein a de-

246

fendant has coupled a jurisdictional objection with an invitation to the court to exercise its jurisdiction. In the instant case the court ruled adversely to the defendant's motion to quash prior to the defendant's requesting the court to strike the complaint; hence, the defendant comes squarely within the provision of the Civil Practice Act that:

> "Error in ruling against the defendant on the objection [that the court lacks personal jurisdiction over the defendant] is waived by the defendant's taking part in further proceedings in the case, unless the objection is on the ground that the defendant is not amenable to process issued by a court of this State." Ill Rev Stats, ch 110, § 20(3) (1961).

Because the motion to strike came after the motion to quash service was denied, the defendant preserved its jurisdictional objection and it had the right to renew this objection. SHA, c 110, § 20, Joint Committee Comments. And the motion judge had the right to review the order vacating the first order to quash if in his judgment the vacating order was erroneous. Richichi v. City of Chicago, 49 Ill App2d 320, 199 NE2d 652 (1964).

The defendant's actions alleged to constitute the transaction of business within Illinois are set forth in the complaint, the affidavits of the plaintiff in opposition to the motion to quash, and the accompanying exhibits. The plaintiff alleged that the defendant placed advertisements in two newspapers sold in Chicago, offering put and call options for sale; that the defendant sent agents into Illinois to conduct seminars and to educate the public about option contracts and thereby promoted sales; that many persons, firms and corporations in Chicago and in Illinois accepted the defendant's offers and bought the options by telephoning or mailing acceptances either directly to the defendant or through brokers. The plaintiff submitted as an exhibit the defendant's 1960 application

247

for registration as a dealer in securities. The application, which was filed with the Illinois Secretary of State, included the defendant's consent to be bound by service of process on the Secretary in suits arising out of sales of securities in violation of the Securities Law of 1953 (Ill Rev Stats, c 121½, § 137.1–137.15). The plaintiff also submitted letters from the defendant to the Secretary of State which certified that the defendant had made sales of option contracts to persons and firms in Illinois. The letters detailed the dates of the transactions, the names and addresses of the purchasers, and the terms of the option contracts.

In its special appearance and motion to quash, the defendant denied that it had transacted business in Illinois within the meaning of section 17(1)(a) or that it could be subjected to the jurisdiction of Illinois courts without a violation of due process. It alleged that it was a partnership composed of two individuals, neither of whom was a citizen or resident of Illinois; that the defendant's only place of business was in New York and that all of its business was transacted there; that none of its partners or employees had accepted an offer or made a sale in Illinois; that Illinois residents either directly or through brokers might have communicated with the defendant in New York, but that sales were made in New York and the option contracts were delivered there to the purchasers' brokers. The defendant admitted placing advertisements in Illinois newspapers but denied that they were offers to sell, admitted sending agents to Chicago to conduct seminars but denied that sales of put and call options were made at the seminars.

The first question is one of statutory construction: does section 17(1)(a) provide for jurisdiction on the facts of this case? Jurisdiction under section 17 has not been restricted to those cases alone where its language literally describes the activities of the defendant. See

Currie, The Growth of the Long Arm: Eight Years of Extended Jurisdiction in Illinois, 1963 Ill L Forum 533. As the Supreme Court observed in Nelson v. Miller, 11 Ill2d 378, 143 NE2d 673 (1957), section 17 reflects the legislative intention to exert judicial jurisdiction over nonresident defendants to the extent permitted by the due process clause. Hence, the courts in construing section 17 have upheld jurisdiction if the defendant has voluntarily established certain minimum contacts with the State, if the State has an interest in providing the plaintiff a forum for litigation, and if the assertion of jurisdiction is not fundamentally unfair.

The complaint in the Koplin v. Lerner case alleged that the two defendants, Saul Lerner Co., Inc., and Filer, Schmidt & Co., had advertised options in newspapers circulated in Chicago and that representatives of the two defendants had been in Illinois promoting their business. An affidavit filed by the plaintiff stated that a subsidiary of the Lerner company had registered in Illinois as a dealer in securities and that Filer, Schmidt had likewise registered as a dealer in securities and had filed a consent to the service of process. Each defendant denied that it had transacted any business in Illinois within the meaning of section 17(1)(a). The Lerner company stated in an affidavit that it had no knowledge of any direct sale to any Illinois resident and that all its sales were made in New York. Filer, Schmidt stated that it conducted its business in New York and that its contracts were executed, paid for, delivered and performed in New York. In an affidavit it stated that occasional inquiries were received from Illinois brokers and that 12 residents in Illinois had maintained accounts at some time during the period covered by the complaint, but that all contracts were made in New York. In response to a request from the Secretary of State for a list of the persons in Illinois to whom it sold options, Filer, Schmidt replied that it had

hoped to do business with individuals but had done none, that its business was with stock exchange firms who did not divulge the names or locations of their customers.

In the Lerner case we stated:

"The complaint, the affidavits and the exhibits were entirely deficient in showing business transactions in Illinois—even an isolated transaction—upon which the cause of action was purportedly based. From the complaint it is apparent that the plaintiff merely suspected that the defendants sold put and call options in Illinois—for no such sale was known to the plaintiff. . . . Registration with the Secretary of State did not bring the defendants within section 17, nor did it vest jurisdiction in Illinois. The registrations by both defendants and the formation of the subsidiary company by Lerner indicate plans and preparations for doing business in Illinois; the advertisements indicate the desire and hope for doing business, but none of these denote that business was done. A willingness to do business and solicitation of business do not constitute the doing of business.

". . . .

"In the present case the plaintiff has not supplied one instance of either defendant entering into a business relationship with any Illinois resident."

Herein lies the distinction between the Lerner and Filer, Schmidt case and the instant one. Exhibits presented by the plaintiff (the defendant's reports to the Secretary of State) disclosed the defendant's regular and continuous sale of option contracts to residents of Illinois: during the period from March 1961 to April 1962 the defendant made 90 sales of option contracts to approximately 50 separate persons and firms in Illinois. The defendant here, as the defendants in the Lerner case, not only made plans and preparations for doing business

250

in Illinois by registering as a dealer in securities, and not only placed advertisements in newspapers which solicited business and conducted seminars to stimulate business but in addition thereto, unlike the defendants in the Lerner case, knowingly did business with Illinois residents.

Although the defendant did not maintain an office in Illinois and did not carry on its activities through agents in this State and although the sales, as a matter of commercial law, may have taken place in New York, the purchases were made and paid for by residents of Illinois who may or could have accepted delivery of the contracts in Illinois, and these knowing sales to Illinois residents by the defendant coupled with its registration with the Secretary of State and its advertisements and seminars constitute contacts in the State which were more than minimal and which, in our opinion, involved the transaction of business. The State has an interest in supplying an effective means of redress for its residents against nonresidents who have allegedly violated its gambling statute, and the plaintiff's suit will aid in effectuating the prohibitions of the statute. The State has additional interests in providing a forum for the suit: the law creating the cause of action is that of Illinois; part of any judgment recovered might be for the use of a county in Illinois. Nor is it unfair to call the defendant into Illinois to answer the complaint. Although evidence such as the defendant's records would be in New York, the far greater number of witnesses would be Illinois residents; and the defendant's burden of defending in Illinois would be less than the plaintiff's burden of suing in New York. The defendant's consent to be bound by process served on the Secretary of State negatives any contention that the possibility of a suit in Illinois comes as a surprise to the defendant. That a put or call option may not be a "security" within the purview of the defendant's consent to substitute service of process

does not detract from the quality or nature of its contacts with Illinois; nor does it make suit in Illinois unfair, for the defendant's reports to the Secretary of State show that it was selling a large number of option contracts to many Illinois residents and so could reasonably anticipate that litigation might arise from the sales. We hold that the defendant engaged in conduct which invoked the benefits and protection of the laws of Illinois and that its contacts with this State were sufficient under section 17(1)(a) to give the courts of Illinois jurisdiction over it.

The defendant contends that section 17(3) of the Civil Practice Act bars extraterritorial service of process on the facts of this case. Section 17(3) provides:

> "Only causes of action arising from acts enumerated herein may be asserted against a defendant in an action in which jurisdiction over him is based upon this section." Ill Rev Stats, c 110, § 17(3) (1961).

It is the defendant's theory that the only factual difference between the present case and the Koplin v. Lerner case is that Thomas, Haab & Botts reported to the Secretary of State that it had made sales to specified customers in Illinois, and since the complaint, even considered together with the accompanying exhibits, does not allege that the plaintiff's cause of action "arose" from any of these specified sales, they cannot be the jurisdictional basis for his suit; thus, the present case is legally identical with the Lerner case.

■ ■ The defendant's construction of section 17(3) would, in effect, limit the exercise of jurisdiction under section 17 to cases where a jurisdictional act of the defendant is the act of which the plaintiff complains. This disregards the purpose of subsection (3). Its purpose is to insure that there is a close relationship between a non-resident defendant's jurisdictional activities and the

252

cause of action against which he must defend. SHA, c 110, § 17, Historical and Practice Notes. In the instant case the statutory phrase "arising from" requires only that the plaintiff's claim be one which lies in the wake of the commercial activities by which the defendant submitted to the jurisdiction of Illinois courts. These activities were the reported sales of put and call options; the cause of action arose from the consequences arising from these sales which allegedly violated the gambling statute; thus, the requirement of section 17(3) was fulfilled.

■ The defendant next contends that the case of Grobark v. Addo Mach. Co., Inc., 16 Ill2d 426, 158 NE2d 73 (1959), and the cases following it (Saletko v. Willys Motors, Inc., 36 Ill App2d 7, 183 NE2d 569 (1962); Kropp Forge Co. v. Jawitz, 37 Ill App2d 475, 186 NE2d 76 (1962)) have construed section 17(1)(a) as requiring the performance of jurisdictional acts by the defendant or its agents while physically present in Illinois, and that none of the asserted jurisdictional acts in the present case (even the defendant's coming into the jurisdiction to conduct its seminars) is sufficient under that test. It is true that Grobark does indicate that the physical presence of a defendant in Illinois is necessary for jurisdiction and that the Saletko and Kropp Forge cases follow Grobark and state that the performance of jurisdictional acts by the defendant or his agent, while physically present in Illinois, is essential for the jurisdiction of our State courts. However, in International Shoe Co. v. Washington, 326 US 310 (1945) (the decision that established new concepts for State jurisdiction over nonresidents) and in McGee v. International Life Ins. Co., 355 US 220 (1957) the requirement of physical presence was not imposed. And two years after the Grobark case our Supreme Court decided Gray v. American Radiator & Standard Sanitary Corp., 22 Ill2d 432, 176 NE2d 761 (1961). Gray was a personal injury suit against a nonresident defendant who

253

made a safety valve in Ohio and sold it outside Illinois to an independent company. The valve was attached to a water heater, which was later sold to an Illinois resident; an Illinois plaintiff was injured by an explosion allegedly caused by the defendant's negligence in Ohio. Neither the defendant nor its agent had entered Illinois. The court construed section 17 to authorize jurisdiction over the defendant. Although jurisdiction in Gray was asserted because of the "commission of a tortious act within this State," (section 17(1)(b)), rather than the "transaction of any business within this State," there is nothing in the language of either subsection which indicates that the physical presence of the defendant is unnecessary under the former but required under the latter provision. To employ different tests for subsections (a) and (b) is not to implement the intended effect of section 17, for when jurisdiction is based on a contract rather than on a tort the interest of the State is not less, nor is the burden on the defendant more. To paraphrase the court in Gray, adopting the criteria urged by the defendant would tend to promote litigation over extraneous issues concerning the elements of the business transaction and the territorial incidence of each, whereas the test should be concerned more with those substantial elements of convenience and justice presumably contemplated by the legislature. We believe there is no substantial reason for differentiating personal injury actions from business transactions insofar as the physical presence of the defendant is concerned, and that physical presence in the State is a factor but should not be the controlling factor in determining jurisdiction. We will follow Gray in holding that jurisdiction over a nonresident defendant pursuant to section 17 does not depend upon the defendant or its agent having participated in a substantial transaction of business while physically present in Illinois.

Essentially the same factors which enter into the determination that section 17 authorizes the exercise

254

of jurisdiction are involved in deciding whether the exercise of jurisdiction is constitutionally valid. Perhaps the basic factor is the quantum of the defendant's contact with the forum State. In deciding whether the activities of the defendant have a substantial connection with the forum State, the relevant inquiry is whether the defendant engaged in some act or conduct by which the defendant may be said to have invoked the benefits and protection of the law of the forum State. Hanson v. Denckla, 357 US 235 (1958). As the court in Gray noted, to the extent that a nonresident defendant's business is affected by transactions occurring here it enjoys benefits from the laws of this State; and the fact that the defendant may have generally dealt with Illinois' residents through a broker and so derived an indirect benefit from our laws does not make it any less essential to the conduct of its business. Moreover, the defendant affirmatively and voluntarily sought the benefit of our laws by initiating and soliciting the sales here and by doing the various acts heretofore enumerated.

The doctrine of Pennoyer v. Neff, 95 US 714 (1877), that the foundation of jurisdiction is physical power, has yielded to a more flexible rule based on "forthright and realistic considerations of fairness in the determination of what constitutes jurisdiction to determine personal rights." Nelson v. Miller, 11 Ill2d 378, 143 NE2d 673. The Grobark case although extensively criticized (see, e. g. Ganz, "Doing Business in Illinois," Vol I, No. 4, Illinois Continuing Legal Education (1963)) represents an extension of the restricted concept of jurisdiction, for the court there implied that service upon a defendant outside the forum State would be proper if the defendant had performed substantial acts within the forum State. The Gray case is a further extension, for there it was recognized that the constitutional validity of jurisdiction is to be tested by the totality of the defendant's contacts with the forum State, and does not depend on any one type of

255

■■■■■■■■■■■■■
■■■■■■■

contact. Under the expanded concept of due process delineated by Gray, we hold that contacts with this State prerequisite to a constitutional exercise of jurisdiction have been made.

The order quashing the service of process upon the defendant is reversed.

Reversed.

SULLIVAN, P. J. and SCHWARTZ, J., concur.