**PROMOTION NETWORK, INC.,**
Plaintiff,

v.

**C. Da SILVA (VINHOS) S.A.R.L.,**
Defendant.

No. 74 C 494.

United States District Court,
N. D. Illinois, E. D.

June 21, 1974.

L. John Crittenden, Herbert & Owens, Chicago, Ill., for plaintiff.

Frederic S. Lane, Harold Hirshman, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

### *Motion to Dismiss*

MAROVITZ, District Judge.

Plaintiff Promotion Network, Inc. ("Promotion Network") brings this suit pursuant to 28 U.S.C. § 1332, and alleges breach of contract by defendant C. Da Silva (Vinhos) S.A.R.L. ("Da Silva"). Defendant is a Portuguese corporation which sells various wines throughout the United States and Canada to divers distributors. Plaintiff is an Illinois corporation with its principal place of busi-

ness in Chicago, and is engaged in the business of promotion and advertising.

Plaintiff avers that at defendant's request, plaintiff created and supervised the execution of defendant's advertising and marketing program for the year of 1972, in return for which plaintiff was paid 15% of the defendant's total 1972 advertising and marketing budget; that as a result of this relationship defendant sent plaintiff a telegram dated December 11, 1972, indicating a 1973 advertising and marketing budget of $400,000; that defendant then mailed a letter dated December 11, 1972, wherein defendant confirmed the cable and requested prompt answer; that on December 12, 1973, plaintiff responded by cable that it would create and supervise defendant's 1973 advertising and marketing program; that on January 17, 1973, plaintiff forwarded the 1973 advertising and marketing program to defendant; and that on or about August 13, 1973, defendant repudiated the agreement.

Suit was brought on February 21, 1974, and process was served on Da Silva by serving Richard Singal in Miami, Florida, on March 15, 1974; Singal is Da Silva's Wholesaler Marketing Representative.

Da Silva now moves this court to dismiss this case for lack of jurisdiction over the person of the defendant and for insufficiency of service of process. Defendant's motions are denied.

*Jurisdiction over the Person*

■ In situations where federal jurisdiction is brought pursuant to diversity of citizenship, in personam jurisdiction "is determined in accordance with the law of the state where the court sits, with 'federal law' entering the picture only for the purpose of deciding whether a state's assertion of jurisdiction contravenes a constitutional guarantee." Arrowsmith v. United Press International, 320 F.2d 219, 223 (2nd Cir. 1963); *accord*, Canvas Fabricators, Inc. v. William E. Hooper & Sons Co., 199 F.2d 485, 486 (7th Cir. 1952). In this case acquisition of jurisdiction over defendant is sought pursuant to the long-arm statute of Illinois, Illinois Civil Practice Act, Ill.Rev.Stat. ch. 110, § 17 (1969), which reads in relevant part:

(1) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of such acts:

(a) The transaction of any business within this State; * * *

In resolving a motion to dismiss for lack of jurisdiction over the person, certain guidelines and intents should be recognized. These are set forth in O'Hare International Bank v. Hampton, 437 F.2d 1173, 1176 (7th Cir. 1971).

The legislative intent of the Illinois long arm statute is to exert jurisdiction over nonresidents to the extent permitted under the due process clause. Nelson v. Miller, 11 Ill.2d 378, 143 N.E.2d 673 (1957); Koplin v. Thomas, Haab & Botts, [73 Ill.App.2d 242, 219 N.E.2d 646,] *supra*; Ziegler v. Houghton-Mifflin, [80 Ill.App.2d 210, 224 N.E.2d 12,] *supra*; Hutter Northern Trust v. Door County Chamber of Commerce, 403 F.2d 481, 485 (7th Cir. 1968).

The due process implications of the extension of personal jurisdiction over nonresident defendants were settled in International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); and Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). "The thrust of these decisions in that sufficient 'minimum contacts' must exist in the forum state

so that jurisdiction over nonresident defendants is reasonable and just according to traditional concepts of fair play and substantial justice. * * * Whether sufficient minimum contacts exist cannot be answered by applying a formula or rule of thumb, but by ascertaining what is fair and reasonable in the circumstances of the particular situation." Hutter Northern Trust v. Door County Chamber of Commerce, *supra*, 403 F.2d at 484.

In the application of this flexible test, "the relevant inquiry is whether defendant engaged in some act or conduct by which he may be said to have invoked the benefits and protections of the law of the forum." Gray v. American Radiator & Standard Sanitary Corp., 22 Ill.2d 432, 440, 176 N. E.2d 761, 765 (1961); Consolidated Laboratories, Inc. v. Shandon Scientific Co., 384 F.2d 797, 801 (7th Cir. 1967).

Rule 12(d), Federal Rules of Civil Procedure, enables a party asserting certain defenses enumerated in subsection (b) of that rule to raise such challenge prior to trial on the merits. The rule clearly contemplates hearing and determination of jurisdictional issues in advance of trial. 2A Moore, Federal Practice ¶ 12.16, at 2352–54 (2d ed. 1968). "As there is no statutory direction for procedure upon an issue of jurisdiction, the mode of its determination is left to the trial court." Gibbs v. Buck, 307 U.S. 66, 71–72, 59 S.Ct. 725, 729, 83 L.Ed. 1111 (1939). When considering a challenge to its jurisdiction, a court may receive and weigh affidavits. 5 Wright and Miller, Federal Practice and Procedure § 1351, at 565 (1969).

Based upon evidence obtained, the court properly decides jurisdictional disputes before trial. Schramm v. Oakes, 352 F.2d 143, 149 (10th Cir. 1965); Williams v. Minnesota Mining & Manufacturing Co., 14 F.R.D. 1, 5 (S.D.Cal.1953). The burden of proof rests upon the party asserting existence of jurisdiction, *id.* at 5; KVOS, Inc. v. Associated Press, 299 U.S. 269, 278, 57 S.Ct. 197, 81 L.Ed. 183 (1936). However, this burden is met by a prima facie showing that jurisdiction is conferred by the long arm statute. United States v. Montreal Trust Co., 358 F.2d 239 (2nd Cir. 1966).

The only affidavit which has been submitted to this court is that of Maria Jose Pacheco, the Secretary to Advertising of defendant Da Silva. She attests to the facts that Da Silva has no offices or manufacturing facilities in Illinois, that it does no business in Illinois, that it is not licensed in Illinois, that it maintains no bank accounts in Illinois, and that it is not listed in the Illinois telephone books.

Defendant cites the case of Grobark v. Addo Machine Co., 18 Ill.App.2d 10, 151 N.E.2d 425 (1st Dist. 1958), affirmed, 16 Ill.2d 426, 158 N.E.2d 73 (1959), in support of its argument that insufficient minimum contacts exist to confer jurisdiction. *Grobark* held that a nonresident's acceptance of orders outside the state and shipping the goods so ordered into the state by independent carriers did not confer jurisdiction under section 17 over a claim by the buyer for breach of an alleged distributorship contract under which, it was contended, the goods were sold. The *Grobark* case has generally been treated as holding "that the performance of jurisdictional acts by a nonresident or his agent, while physically present in Illinois, is essential for submission to the jurisdiction of the courts of this state under section 17(1)(a)." Kropp Forge Co. v. Jawitz, 37 Ill.App.2d 475, 480–481, 186 N.E.2d 76, 79 (1st Dist. 1962).

■ Clearly, that aspect of *Grobark* is no longer sound. Personal jurisdiction over a non-resident defendant does not depend upon the physical presence of the defendant within the state. It is sufficient that the act or transaction itself has a substantial connection with

the forum state. Gray v. American Radiator & Sanitary Corp., 22 Ill.2d 432, 438, 176 N.E.2d 761, 764 (1961); Koplin v. Thomas, Haab & Botts, 73 Ill. App.2d 242, 254, 219 N.E.2d 646, 652 (1966); Ziegler v. Houghton-Mifflin Co., 80 Ill.App.2d 210, 215, 224 N.E.2d 12 (1967). More significantly, the legal analysis of the majority opinion in *Grobark* has come under attack by the Seventh Circuit. Fisons Limited v. United States, 458 F.2d 1241, 1249–1250 (7th Cir. 1972). The *Fisons* court noted that:

> Justice Davis, joined by Justice Schaefer, filed a lucid dissenting opinion, pointing out that the Court's holding did not rest on a construction of the Illinois statute, but rather on the majority's interpretation of the Fourteenth Amendment to the Federal Constitution. Since we are not bound by a state court's answer to a federal question, it is entirely appropriate for us to state our agreement with the dissenting Justices' analysis of federal law as applied to the *Grobark* facts. (footnotes omitted)

The analysis of the dissenting opinion in *Grobark* states in part:

> The legislature did not restrict such jurisdiction to actions arising out of express contracts, but has extended the jurisdictional basis to the transaction of any business within the State. (Ill.Rev.Stat.1957, chap. 110, par. 17(1)(a).) This should be construed to include any business activity sufficient to create the essential minimum contacts with the forum.

> The United States Supreme Court has come far from the doctrine of *in personam* jurisdiction enunciated in Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565, but as I read the opinion in the case at bar, I cannot but believe that this court is again dealing with the early historic legalistic definitions of "doing business" rather than with the concept of "minimal contacts" established in *International Shoe* and *McGee*.

There is nothing in Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L. Ed.2d 1283, which either requires this result, or justifies the court's timorous approach to the practical aspects of *in personam* jurisdiction. If, as we held in *Nelson*, "The foundations of jurisdiction include the interest that a State has in providing redress in its own courts against persons who inflict injuries upon, or otherwise incur obligations to, those within the ambit of the State's legitimate protective policy," then this court should not needlessly render Illinois courts impotent to serve our residents by reason of a supposed compulsion stemming from the Fourteenth amendment. That *Hanson* involves an entirely different problem is apparent from the discussion of that case in the court's opinion. 16 Ill.2d at 440, 158 N.E.2d at 81.

Defendant further argues that "entering into a business relationship with an Illinois entity is not a sufficient contact with Illinois to submit a party to the jurisdiction of the Illinois state courts or to the Federal court sitting in Illinois," (Defendant's brief, p. 3), and cites for support, *inter alia*, Geneva Industries, Inc. v. Copeland Construction Corp., 312 F.Supp. 186 (N.D.Ill.1970), and Quartet Manufacturing Company v. Allied Traders, Ltd., 343 F.Supp. 1302 (N.D.Ill. 1972). We believe defendant reads those cases too restrictively.

▮ In *Geneva* the court found that a single sale of goods by an Illinois plaintiff to a Pennsylvania defendant, negotiated entirely by telephone and letter, fell short of possessing constitutionally sufficient minimum contacts with Illinois, and in *Quartet* the court concluded that a single purchase of goods by an Illinois plaintiff from a Hong Kong defendant, solicited by plaintiff, also was insufficient to warrant the exercise of jurisdiction over the defendant when it refused

to make delivery. Yet such cases as Koplin v. Thomas, Haab & Botts, 73 Ill. App.2d 242, 219 N.E.2d 646 (1st Dist. 1966) and Continental Nut Co. v. Robert L. Berner Co., 345 F.2d 395 (7th Cir. 1965) have been read by noted commentators as holding "that knowingly [making sales to or agreements with] Illinois residents is sufficient for jurisdiction even if the defendant or his agents have never been in Illinois." Jenner and Tone, Historical and Practice Notes, Smith-Hurd Anno.Stat., chap. 110, par. 17, p. 169. While jurisdiction in *Koplin* and *Continental Nut* is more evident than in the instant case, we find the Promotion Network-Da Silva relationship much closer to an "agreement" than to the "isolated sale" phenomenon of *Geneva* and *Quartet*.

Defendant also examines the documents (cables) which allegedly comprise the breached agreement, and notes they are much too cryptic to be understood by the uneducated recipient. Defendant contends that the telegrams are responses to transactions initiated in New York, that the focus of the Da Silva-Promotion Network transactions in the U.S. transpired in New York, and that such is evident from Ms. Pacheco's affidavit and a letter from Da Silva labelled Exhibit 2 of plaintiff's complaint. The court concedes that the cables, when considered only by themselves, are too cryptic to be understood by the uneducated recipient, but we are reminded that the parties had an on-going working relationship for the prior eight months, and that the 1972 agreement could easily aid in providing a foundation for understanding the cables.

In Consolidated Laboratories, Inc. v. Shandon Scientific Co., Ltd., 384 F.2d 797 (7th Cir. 1967), negotiations for a contract were carried on in Illinois and England. This contract was replaced by another. The negotiations for the substitute contract, upon which plaintiff sued, took place outside of Illinois. The court, in holding in favor of jurisdiction, reversed the district court and said, 384 F.2d at 801:

> The district court decision as to Shandon/London rested on the implicit finding that all that had transpired in Illinois before the making of the October, 1965, contract was irrelevant to the question of jurisdiction. We consider this a too restricted view of the facts . . . .
>
> . . . . The plaintiff's claim lies "in the wake" of the defendant's Illinois business activities. Koplin v. Thomas, 219 N.E.2d at 651.

Similarly in this case we find of major significance the fact that plaintiff had been servicing defendant for the better portion of a year.

We note, futher, that in O'Hare International Bank v. Hampton, *supra,* the court remarked with regard to the lease of aircraft that, "The defendants certainly must have contemplated the effects in Illinois of a failure to make the monthly rental payments;" the same is true here where the agreement, if one exists, would be performed in Illinois. The defendant would appear to be invoking "the benefits and protection" of the state. Hutter Northern Trust v. Door County Chamber of Commerce, 403 F.2d 481, 484 (7th Cir. 1968).

■ We reiterate that the jurisdiction in this case is not clear-cut based on the record before us. But our holding today does not relieve plaintiff from proving jurisdictional facts at trial. United States v. Montreal Trust Co., 358 F.2d 239, 242 n. 4 (2nd Cir. 1966). We conclude only that the plaintiff has successfully met the burden of making a *prima facie* case that jurisdiction in the suit at bar is conferred by the Illinois long arm statute.

We are influenced, too, by our belief that plaintiff is surely entitled to have his grievances heard in some forum, and this one seems at least as fair, and probably fairer to all parties as any other forum.

**440**

Again, the only issue really before us in resolving this motion is whether Da Silva's contacts with Illinois are so minimal as to offend "traditional notions of fair play and substantial justice." Upon considering the entire history of Da Silva's relationship with Promotion Networks, we conclude our "notions of fair play" are not so offended.

### Insufficiency of Service of Process

Defendant moves to dismiss this action for insufficiency of service of process, and states as grounds therefor that Richard Singal, the individual upon whom process was served, is an independent contractor for Da Silva and not its agent, and is an improper person to receive process. (Pacheco affidavit).

Plaintiff argues that a letter from Da Silva on July 4, 1972, relates that Singal was appointed Da Silva's "Wholesaler Marketing Representative", and in a letter dated July 18, 1972, Singal is designated as "Manager of Sales in U.A." Also, plaintiff states that virtually all of Singal's correspondence is written on C. Da Silva's letterhead stationery.

In National Gas Appliance Corp. v. AB Electrolux, 270 F.2d 472 (7th Cir. 1959), a United States representative of a Swedish manufacturing corporation was deemed an agent for service on a Swedish corporation, and service upon such representative outside of Illinois was sustainable under Illinois law based on the *corporation's minimum business contacts with Illinois.* Ill.Rev.Stat. ch. 110, §§ 13.3, 16, and 17.

In determining whether Mr. Singal is a proper person to receive process, our concern is primarily with Da Silva's receiving notice, and having opportunity to be heard. When an individual is assigned responsibilities and duties as important as those Mr. Singal has undertaken as Marketing Representative and Manager of Sales, noting further that he has the intelligence to understand the purport of the service, we find no reason to declare the service invalid. *Cf.,* Megan v. Foster Co., 1 Ill.App.3d 1036, 275 N.E.2d 426 (2nd Dist. 1971).

In sum, then, we conclude that the history of Da Silva's relationship with Promotion Networks is sufficient to create a *prima facie* case that Da Silva has established sufficient minimum contacts with this forum state so as not to offend traditional notions of fair play and justice and so as to confer jurisdiction under the Illinois long-arm statute. We further conclude that Richard Singal, acting as U.S. marketing representative, may receive service of process for purposes of satisfying Ill.Rev.Stat. ch. 110, §§ 13.3, 16 and 17. Defendant's motions to dimiss are denied.