Robert I. GORDON, doing business as Homemakers Research Institute, Plaintiff,

v.

INTERNATIONAL TELEPHONE AND TELEGRAPH CORP., a corporation, Howard W. Sams, Inc., a corporation, Bobbs-Merrill Company, Inc., a corporation, Theodore Audel & Company, a corporation, and American Handbook and Textbook Co., Inc., a corporation, Defendants.

No. 67 C 238.

United States District Court
N. D. Illinois, E. D.

Sept. 14, 1967.

---

Elmer Gertz, Chicago, Ill., for plaintiff.

Charles H. Weiland, Lord, Bissell & Brook, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

WILL, District Judge.

Plaintiff brings this action for breach of contract seeking damages and recission of the contract. Briefly, the complaint alleges that one of the defendants is the successor in interest to parties who were obligated to plaintiff under a royalty contract for the publication of certain copyrighted cookbooks. Plaintiff claims that, in return for his assignment of the copyrights to these books, defendants' predecessors promised to pay plaintiff certain royalties and to promote the sale of the books. Plaintiff's promisors and their successor, one of the defendants, allegedly failed to perform their obligations.

All the defendant corporations are closely related and plaintiff alleges that he has been unable to identify which defendant now owns the copyrights. Con-

sequently, he brought suit against all the named defendants.[1]

■ Defendant International Telephone and Telegraph Company (ITT) has moved to dismiss the complaint as to itself on the ground that the complaint fails to state a claim against ITT. The only allegation against ITT is that defendant Howard W. Sams & Co., Inc. (Sams) is its subsidiary. ITT is correct in its assertion that mere ownership of stock does not make a parent corporation liable for the acts of its subsidiary. The organizational confusion engendered by the corporate maneuvers of the defendants has led plaintiff to urge that he might be able to allege facts which would justify "piercing the corporate veil." Since we have yet to see any allegations which would support such a finding in the instant case, the complaint as to ITT will be dismissed. If plaintiff subsequently has a basis for so doing, he may seek leave to amend the complaint to allege facts supporting this theory.

■ One other defendant must also necessarily be dismissed. Defendant Theodore Audel & Company is not a separate entity at all but merely a division of Sams. Service on American Handbook & Textbook Company must be quashed because the person upon whom service was made was in no way connected with that company. As a result, the service was inadequate. International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057 (1945)

■ All the other defendants have moved to dismiss on the ground that they are not subject to the *in personam* jurisdiction of Illinois courts. Since, in a diversity case, federal courts must follow state rules regarding the assertion of *in personam* jurisdiction over non-residents [2] to the extent such rules are consistent with due process, defendants contend that this court is bound by Illinois law. They argue that the cause of action did not arise out of activities which took place within the state of Illinois and that their activities in Illinois, which are unrelated to the instant action, do not afford a basis for exercising *in personam* jurisdiction over defendants under Illinois law.

We disagree. After an examination of the facts produced by extensive discovery, we conclude that defendants' activities within Illinois are sufficient to support *in personam* jurisdiction over them.

The relevant facts briefly are these. Sams is a Delaware corporation organized in 1966. It acquired the assets and assumed the liabilities of HWS, Inc. (HWS), an Indiana corporation which is in process of dissolution. Bobbs-Merrill Company, Inc. is an Indiana corporation. On February 7, 1967, in Indianapolis, Indiana, a United States Deputy Marshal personally served summons on A. V. Langston, an officer of all the above named companies. Sams and Bobbs-Merrill are book publishers as was HWS. Since its inception Sams has employed two salesmen to solicit orders for its products in the state of Illinois. These same men performed the same services for HWS when it existed. Bobbs-Merrill regularly sends salesmen into Illinois to solicit orders. In addition, these companies have engaged in heavy mail order solicitation in Illinois.[3]

1. Plaintiff's confusion is understandable given the complex transfers of corporate personalities set out in defendants' documents. Technically, a corporation with the name Howard W. Sams, Inc. does not exist. Howard W. Sams & Co., Inc. (emphasis supplied) was an Indiana corporation until 1966 when it sold its assets, including its name, to a Delaware corporation now known as Howard W. Sams & Co., Inc. The Indiana corpora-tion adopted the name HWS, Inc. and is now in the process of dissolution. Both the Indiana corporation and the Delaware corporation have responded as defendants.

2. Rule 4(e), Federal Rules of Civil Procedure.

3. From October 31, 1966 through February 28, 1967, Sams solicited orders by mail from at least 5,836 persons in Il-

The jurisdictional question presented by this motion is whether under Illinois law a foreign corporation may be subjected to personal jurisdiction based on a large volume of personal and mail sales solicitation and sales in Illinois unconnected with the instant cause of action.[4] Defendants argue that Illinois law governs the question and that Illinois law requires more than "mere solicitation" for the exercise of *in personam* jurisdiction.

Those earlier Illinois cases which held that *in personam* jurisdiction over foreign corporations cannot be based on "mere solicitation" justified their holdings on a now outdated interpretation of the due process clause of the Fourteenth Amendment. See Bull & Co. v. Boston & Maine R. R., 344 Ill. 11, 175 N.E. 837 (1931); Booz v. Texas & S. P. R. R., 250 Ill. 376, 95 N.E. 460 (1911); both citing as authority Green v. Chicago, Burlington & Quincy Ry., 205 U.S. 530, 27 S.Ct. 595, 51 L.Ed. 916 (1907).

Subsequently, in 1945, International Shoe Co. v. State of Washington, supra, held that solicitation alone on a systematic and continuous basis was sufficient to support the assertion of *in personam* jurisdiction. In that case and its successors, the Supreme Court categorically rejected the old "fictive" concepts of "presence", "consent", and "doing business." Olberding v. Illinois Central R. R., 346 U.S. 338, 74 S.Ct. 83, 98 L.Ed. 39 (1953); McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed. 2d 223 (1957). In their stead was substituted the requirement that personal jurisdiction be predicated on a person's so-called "minimum contacts" with the forum through which that person can be

said to have affirmatively invoked the benefits and protection of the forum's laws. Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). The nature of these "minimum contacts" was admittedly ill-defined, it being necessary only that the assertion of jurisdiction be consistent with "traditional notions of fair play and substantial justice." [5]

Applying this standard to the instant case, it is readily apparent that the defendants, both through personal contacts and the mails, affirmatively attempted to and did obtain purchase orders from numerous Illinois citizens. Defendants must have recognized that it might be necessary to invoke the protection of Illinois law to enforce the benefits of their numerous contracts with Illinois citizens. Since defendants actively sought and obtained responses from within Illinois which might require the exercise of the power of the state of Illinois for their benefit, it is fair that defendants be subjected to the jurisdiction of Illinois courts.

The evolution reflected by *International Shoe* could have been limited to situations where forum state activities were related to the suit in which jurisdiction was asserted. However, the Supreme Court in *International Shoe* recognized cases where jurisdiction had been grounded on substantial forum state activities unrelated to the cause in suit. That substantial unrelated activities within the forum state could support *in personam* jurisdiction over a nonresident was reaffirmed in Perkins v. Benguet Consolidated Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952).

linois. From January 1, 1966 through February 28, 1967, Bobbs-Merrill solicited at least 986 persons in Illinois by mail with the number of persons in eleven additional mailings into Illinois unidentified. From January 1, 1966 through October 31, 1966, HWS solicited at least 48,982 persons in Illinois by mail.

4. Given our holding that the defendants are subject to personal jurisdiction as

a result of their continuous and substantial solicitation within the state, we need not reach the question whether the instant action is based on the transaction of business within the state and therefore governed by Ch. 110, Ill.Rev.Stat. § 17.

5. Milliken v. Meyer, 311 U.S. 457, 61 S. Ct. 339, 85 L.Ed. 278, 132 A.L.R. 1357 (1940).

The present federal standard of due process them provides that solicitation alone may be sufficient to support *in personam* jurisdiction over a nonresident. Further, if that solicitation be substantial and continuous, it is unnecessary that it be related to the cause sued upon.

■ The states, however, need not adopt this standard. While the states may not extend their power beyond these limits, the states can restrict their jurisdictional power to something less than the maximum due process allows. Arrowsmith v. United Press International, 320 F.2d 219, 6 A.L.R.3d 1072 (2 Cir., 1963).

It is open to question whether Illinois has adopted jurisdictional rules which are more restrictive than allowed by due process. Defendants urge that a recent Illinois decision appears to follow the rule that "mere solicitation" is insufficient to support jurisdiction over nonresidents. Hertz Corp. v. Taylor, 15 Ill. 2d 552, 155 N.E.2d 610 (1959). But the *Hertz* case relied on earlier Illinois decisions which, as discussed above, were in turn based on a now obsolete interpretation of due process limitations. Since the "mere solicitation" rule is merely an attempt to observe the limits of due process imposed by the federal constitution, the rule may be ignored if due process allows a more liberal standard and it appears that the state wishes to extend its jurisdictional power to the full limits allowed by due process.

That Illinois intends its jurisdictional power to extend as far as due process permits is evident from an examination of judicial and legislative pronouncements. Historically, Illinois has attempted to exercise its jurisdiction coextensively with due process. Booz v. Texas & S. P. R. R., supra. Jurisdiction was traditionally predicated on whether the nonresident was "doing business" within the state. It did not matter that the activities within the state were unrelated to the cause

of action so long as the activities were continuous and substantial.

With the advent of *International Shoe* and its progeny, particularly *McGee*, due process as a jurisdictional restraint was expanded to allow the exercise of *in personam* jurisdiction over persons engaged in isolated acts within the forum state if the cause of action arose out of those acts. It was this new area of isolated activities, not covered by prior interpretations of due process, that section 17 of the Illinois Civil Practice Act was designed to codify. This attempt to fill the newly created gap between the old outer limits of due process grounded on continuous, systematic activities and the new expanded limits which included solitary acts stimulated the now oft-quoted statement of the Illinois Supreme Court in Nelson v. Miller, 11 Ill.2d 378, 143 N.E.2d 673 (1957).

> Sections 16 and 17 of the Civil Practice Act reflect a conscious purpose to assert jurisdiction over nonresident defendants to the extent permitted by the due-process clause. 143 N.E.2d at 679.

■ In conjunction with the singular activities tests set forth in Section 17, it is clear that Illinois intended to retain the multiple activities test which allowed *in personam* jurisdiction over nonresidents in suits unrelated to Illinois activities. Hertz Corp. v. Taylor, supra. Thus, Illinois has confirmed that it wishes to exercise all possible bases of jurisdiction which are consistent with the due process clause.[6]

We conclude that since Illinois has manifested an intent to exercise as broad a jurisdiction as due process allows and since the due process clause allows the exercise of *in personam* jurisdiction over a nonresident who systematically solicits and obtains business in the forum state, we can properly exercise jurisdiction over the remaining defendants.

6. Recent evidence of the breadth of Illinois' concept of *in personam* jurisdiction is found in Koplin v. Thomas, Haab & Botts, 73 Ill.App.2d 242, 219

N.E.2d 646 (1st Dist., 1966), and Ziegler v. Houghton-Mifflin Co., 80 Ill.App.2d 210, 224 N.E.2d 12 (2d Dist., 1967).

Defendants' final challenge is to the sufficiency of the service of process. They argue that under Illinois law personal service made outside the state is only proper when the basis of personal jurisdiction is an act listed in section 17 of the Illinois Civil Practice Act. Since jurisdiction in this case is not predicated on section 17, defendants argue that service on the defendants within the state of Indiana was improper and should be quashed.

 Personal service outside the state of Illinois is prescribed by Ch. 110, Ill. Rev.Stat. § 16, which provides in pertinent part,

> (1) Personal service of summons may be made upon any party outside the State. If upon a citizen or resident of this State or *upon a person who has submitted to the jurisdiction of the courts of this State,* it shall have the force and effect of personal service of summons within this State; * * * (emphasis by the court)

A literal reading of the italicized phrase would support a finding that proper service has been made. We have held that the defendants have submitted to the jurisdiction of the courts of this state by their continuous solicitation and securing of orders in Illinois. Defendant argues, however, that the legislative history of the quoted portion of section 16 discloses that it was designed solely to implement the bases of jurisdiction set forth in section 17. An examination of the comments of the Joint Committee on Illinois Civil Procedure to section 16 substantiates this claim. Nevertheless, these advisory notes are not binding and we are confronted with several reasons which support a finding of valid service. First, service in this case was in literal compliance with the terms of section 16. Second, while the defendants in this particular case have agents in Illinois upon whom service could be made pursuant to Ch. 110, Ill.Rev.Stat. § 13.3, the basis of jurisdiction which we have applied in this case would be applicable even if none of defendants' agents had been available for service within Illinois.

Were we to find section 16 inapplicable to such a situation, Illinois has no other service statute by which personal service could be made. When combined with the two preceding reasons, the acknowledged intent of Illinois to exercise as broad a personal jurisdiction as possible convinces us that service pursuant to section 16 is valid in this case.

We conclude that Howard W. Sams and Co., Inc., HWS, Inc., and Bobbs-Merrill Co., Inc. are subject to the jurisdiction of this court. We find further that service of process was adequate under Illinois law. An appropriate order will enter.