GENEVA INDUSTRIES, INC., Plaintiff,.

v.

COPELAND CONSTRUCTION CORPORATION, Defendant.

No. 70 C 158.

United States District Court,
N. D. Illinois, E. D.

April 29, 1970.

Myron M. Cherry, Edward J. Brunet, McDermott, Will & Emery, Chicago, Ill., for plaintiff.

Stephen C. Shamberg, Marilyn J. Ireland, Friedman, Koven, Shapiro, Salzman, Koenigsberg, Specks & Homer, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

WILL, District Judge.

Plaintiff, Geneva Industries, Inc. ("Geneva"), brings this suit to collect for cabinets manufactured by it, sold and delivered in the State of Pennsylvania to defendant, Copeland Construction Company ("Copeland"). Geneva is an Illinois corporation and maintains its principal place of business at Geneva, Illinois. It is in the business of manufacturing and distributing throughout the United States for both commercial and residential use, kitchen cabinets, kitchen case work and related items. Copeland is a Pennsylvania corporation, having its principal place of business in Allentown, Pennsylvania. Copeland is a general contractor operating only in Pennsylvania and builds various commercial and residential buildings.

Geneva seeks to base jurisdiction on diversity of citizenship, 28 U.S.C. § 1332. Rule 4(e) of the Federal Rules of Civil Procedure provides that federal courts follow state rules regarding the assertion of *in personam* jurisdiction over nonresidents to the extent such rules are consistent with due process. Defendant Copeland has moved to dismiss on the ground that it has never "transacted business" within the State of Illinois within the meaning of the Illinois long-arm statute,[1] and that a determination that this Court has personal jurisdiction over it would offend due process of law in that the defendant has not had the requisite "minimum contacts" with this forum.[2] The parties to this case have both submitted affidavits

and exhibits which are relevant solely to the question of the Court's jurisdiction. While the affidavits are not completely consistent, the following general statement of the business transaction here involved is established: Copeland advertised in Pennsylvania for bids and quotations regarding custom metal casework for use in connection with certain modifications to be made to a hospital in Lehighton, Pennsylvania. The low bid for the production and installation of the cabinets was made to Copeland by Institutional Associates, Inc., whose place of business is Kreamer, Pennsylvania. Institutional Associates, Inc. is the Pennsylvania agent of Geneva, and its bid was based upon manufactured casework to be purchased by Institutional Associates from Geneva and resold to Copeland. Copeland was dissatisfied with the quotation, and there were further communications between Copeland and Institutional Associates, as well as Geneva, which culminated in the execution of a contract between Copeland and Geneva on November 6, 1967.

The parties dispute the nature and course of these communications. Geneva maintains, particularly on the basis of an affidavit of its Vice-president, that Copeland was informed that any lower bid would have to be negotiated directly between Copeland and Geneva, that Copeland thereafter by mail directly solicited a quotation from Geneva, and that subsequent to the mailing by Copeland to Geneva of the proposed plans for the casework on June 29, 1967, Institutional Associates did not in any way participate in the negotiations resulting in the ultimate contract.

Copeland maintains, on the basis of the affidavit of its President, that Copeland was never informed that any bid would have to be negotiated directly with Geneva, and that all of the negotiations leading up to the execution of the contract on November 6, 1967, were con-

---

1. Ill.Rev.Stat. Ch. 110, § 17(1) (a), 1967.

2. The rule articulated in Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.

2d 1283 (1958); International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

ducted, in so far as Copeland was concerned, with Institutional Associates, Inc. The Copeland affidavit relates that after the original bid submitted to Copeland by Institutional Associates, Inc. was rejected, the latter asked Copeland to send the plans and specifications directly to Geneva so that Geneva could study them thoroughly and perhaps make it possible for Institutional Associates to submit a lower bid.

■ While the exhibits that have been submitted to the Court tend to confirm Copeland's version of the negotiations prior and subsequent to the contract with Geneva, the resolution of the factual questions that have been raised by the conflicting affidavits is not necessary to a determination of whether this Court has jurisdiction over the defendant. Even accepting Geneva's version of the facts, it is clear that the minimum contacts essential to personal jurisdiction are not present in this case. Quite simply, Copeland, even under Geneva's version of the facts, was no more than a customer for a single sale by Geneva which was negotiated through the mails and by telephone. There is thus no *in personam* jurisdiction regardless of the rule that physical presence may be unnecessary to jurisdiction pursuant to Section 17 of the Illinois long-arm statute[3] or the rule that physical presence is not an essential condition of minimum contacts.[4]

■ A citizen of a foreign jurisdiction does not submit to *in personam* jurisdiction of the forum state when a seller based in the forum state, through its agent in the foreign jurisdiction, initiates a contractual relationship between his principal in the forum state and the customer in the foreign state. The fact that the seller accepts the contract in the forum state does not alter this result. Nor is it determinative in the instant case that communications relating to that contract passed between Illinois and the foreign jurisdiction.

Plaintiff refers this Court to its opinion in Gordon v. International Telephone and Telegraph Corp., 273 F.Supp. 164 (N.D.Ill.1967) and quotes the proposition, stated at page 167, that

> Since defendants actively sought and obtained responses from within Illinois which might require the exercise of the power of the State of Illinois for their benefit, it is fair that defendants be subjected to the jurisdiction of Illinois courts.

But the point in *Gordon* was that "defendants actively sought and obtained responses from within Illinois." The defendant in *Gordon* regularly sent its salesmen into Illinois to solicit orders. Defendant in *Gordon* also engaged in a heavy mail order solicitation in Illinois and entered into numerous contacts and contracts with Illinois citizens. Especially to be noted is that in *Gordon*, the defendant over whom jurisdiction was sought was a seller who sold regularly in the forum state; whereas in the instant case, the defendant over whom jurisdiction is sought is a buyer who made a single isolated purchase from the plaintiff.

If the legal position for which Geneva is contending were correct, anyone in any state who bought anything by mail from an Illinois based manufacturer or sales organization would be subject to the jurisdiction of the Illinois courts. The notion that any customer of an Illinois based mail order house such as Sears Roebuck or Montgomery Ward would be subject to the jurisdiction of Illinois courts is obviously violative of the most minimal standard of minimum contacts and the fundamental structure of the federal system. In addition, it may be noted that the instant case is

---

3. *See*, Koplin v. Thomas, Haab & Botts, 73 Ill.App.2d 242, 219 N.E.2d 646 (1966); Gray v. American Radiator & Standard Sanitary Corp., 22 Ill.2d 432, 176 N.E.2d 761 (1961).

4. Jack O'Donnell Chevrolet v. Shankles, 276 F.Supp. 998 (N.D.Ill.1967).

even less amenable to a determination that Illinois *in personam* jurisdiction is proper than the case of an out of state purchaser from an Illinois mail order house, since in the instant case, the record is clear that the contractual relationship involved was initiated in the foreign jurisdiction by an agent of the Illinois plaintiff. In sum, a finding of minimum contacts in the instant case would render the requirement of due process a nullity.

For the foregoing reasons, defendant's motion to dismiss is granted. An appropriate order will enter.