**Dr. George HENDERSON, Plaintiff,**

**v.**

**UNIVERSITY ASSOCIATES, INC., a California Corporation, Defendant.**

**No. CIV–77–0394–T.**

United States District Court, W. D. Oklahoma.

Sept. 20, 1977.

Philip F. Horning of Bulla, Horning & Johnson, Oklahoma City, Okl., J. David Rambo, Norman, Okl., for plaintiff.

D. Kent Meyers and Brooke S. Murphy of Crowe, Dunlevy, Thweatt, Swinford, Johnson & Burdick, Oklahoma City, Okl., for defendant.

## MEMORANDUM OPINION AND ORDER

RALPH G. THOMPSON, District Judge.

This case comes before the Court on defendant's Motion to Dismiss for lack of jurisdiction over the person pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. The plaintiff is a professor at the University of Oklahoma and the defendant is a publisher of scholarly works.

 Subject matter jurisdiction in this case being founded upon diversity of citizenship, the Court must look to Oklahoma law for the basis of personal jurisdiction over a nonresident defendant. Oklahoma's "long-arm" statutes [1] were intended to expand the proper exercise of *in personam* jurisdiction by Oklahoma courts over nonresidents to the outer limits permitted by the due process requirements of the United States Constitution.[2]

The United States Supreme Court in *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), provided guidance for establishing where, in a particular case, the "outer limits" of due process fall. The Court, speaking through Chief Justice Stone, said at 316, 66 S.Ct. at 158:

"... [D]ue process requires only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' "

In an attempt to make "minimum contacts" a manageable standard the Court explained at 319, 66 S.Ct. at 159:

"It is evident that the criteria by which we mark the boundary line between those activities which justify the subjection of a corporation to suit, and those which do not, cannot be simply mechanical or quantitative. The test is not merely, as has sometimes been suggested, whether the activity, which the corporation has seen fit to procure through its agents in another state, is a little more or a little less. Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment *in personam* against an individual or corporate defendant with which the state has no contacts, ties, or relations.

But to the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations; and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue." [Citations omitted]

1. 12 O.S.1976 Supp., § 187 and 12 O.S.1971, § 1701.03.

2. *George v. Strick Corporation*, 496 F.2d 10 (10th Cir. 1974); *Fields v. Volkswagen of America, Inc.*, 555 P.2d 48 (Okl.1976); *Carmack v. Chemical Bank New York Trust Co.*, 536 P.2d 897 (Okl.1975); *Vemco Plating, Inc. v. Denver Fire Clay Company*, 496 P.2d 117 (Okl. 1972); *Hines v. Clendenning*, 465 P.2d 460 (Okl.1970).

The contacts with Oklahoma which the plaintiff asserts are sufficient to establish a basis for *in personam* jurisdiction are found in an affidavit of plaintiff, Dr. George Henderson. The affidavit states that a certain student at the University of Oklahoma attended workshops in La Jolla, California, sponsored by the defendant in 1975. At these workshops a representative of the defendant requested the student to tell the plaintiff that they were interested in looking at his work for possible publication. The student communicated this message to the plaintiff. The affidavit further states that the defendant mailed to the plaintiff and his colleagues in Norman, Oklahoma, a publication entitled, *A Handbook of Structured Exercises*, through which publication the plaintiff learned that the defendant was soliciting manuscripts for review and publication. Brochures were also sent to the plaintiff in Norman, Oklahoma, indicating that the defendant solicits manuscripts for review and publication. Dr. Henderson lists additional numerous journals and publications which were sent directly to him in Norman, Oklahoma, through the mail, which he states made him further aware that the defendant was interested in reviewing and publishing new manuscripts. He states that these instances were the bases upon which he formed his intent to submit, upon which he did submit, his manuscript entitled "Humanizing Black Education", to University Associates, Inc.

The affidavit states that J. William Pheiffer, president of the defendant corporation, made a telephone call to the plaintiff in Norman, Oklahoma during November of 1975 to discuss the manuscript. He explained how it should be evaluated and suggested changes to be made. Pheiffer then sent a letter to the plaintiff in Norman, Oklahoma informing the plaintiff that the manuscript had been assigned to Anthony G. Banet, Ph.D. and Marion Fusco, as senior consultant and managing editor, respectively. Dr. Henderson states that he received subsequent correspondence from these individuals in Norman, Oklahoma. That in this subsequent correspondence, in February, March and May of 1976, they suggested revisions and additions to his manuscript which revisions and additions were performed by him in Norman, Oklahoma and sent to the correspondents for their approval.

On May 5, 1976, the plaintiff received a letter signed by Marion Fusco and Anthony Banet, in which they stated that his contract for "Humanizing Black Education" was enclosed. The contract had already been executed by the defendant through its president, Pheiffer, and lacked only the plaintiff's signature for completion. The plaintiff signed a copy of the contract and mailed it back to the defendant on May 11, 1976. The plaintiff subsequently received a letter from Bruce Dexter, senior editor for the defendant, informing him that other consultants assigned to his manuscript were in the process of working out long-range schedules for printing.

Through a letter dated January 13, 1977, which is attached to the complaint, the defendant informed the plaintiff that it had decided to abandon the project and return to him his manuscript. The plaintiff is suing the defendant for breach of the contract dated May 5, 1976.

■ It is clear that the mere employment of a resident by a nonresident, even where the resident performs work for the nonresident in Oklahoma, does not establish sufficient contact on the part of the nonresident with Oklahoma to subject the nonresident to the jurisdiction of Oklahoma courts.[3] This is true where the employee chooses to perform the work in Oklahoma and where the employment does not entail the employee acting as an agent of the employer for the purpose of carrying on the business of the employer in Oklahoma.

■ An out-of-state seller is easily made subject to the actions brought on

---

**3.** *Anderson v. Shiflett*, 435 F.2d 1036 (10th Cir. 1971) and *Crescent Corporation v. Martin*, 443 P.2d 111 (Okl.1968).

behalf of resident purchasers or users.[4] Generally, the courts have been reluctant to assert jurisdiction over a nonresident buyer.[5] The reason most often given for this buyer-seller distinction is that the seller is usually the aggressor or initiator in the forum and by selling his product in the state he receives not only a profit but the benefit and protection of the forum state's laws.[6] The Court in *Geneva Industries, Inc. v. Copeland Construction Corp.*, 312 F.Supp. 186 (N.D.Ill.1970), made the following comment at page 188:

> "The notion that any customer of an Illinois based mail order house such as Sears Roebuck or Montgomery Ward would be subject to the jurisdiction of Illinois courts is obviously violative of the most minimal standard of minimum contacts and the fundamental structure of the federal system."

To subject such out-of-state buyers to local court jurisdiction would not only obliterate state boundaries but would discourage out-of-state purchasers from dealing with resident sellers. However, an additional distinction has developed in the case law. This distinction involves "active-purchaser, passive-purchaser" classification. The "passive-purchaser" has been defined as one "who simply places an order and sits by until the goods are delivered".[7] The "active-purchaser" classification was adopted, as establishing sufficient contact for the extra-territorial exercise of jurisdiction over such buyer, by the Oklahoma Court of Appeals, Division 2, in *Vacu-Maid, Inc. v. Covington*, 530 P.2d 137 (Okl.App.1974), and by the Oklahoma Supreme Court in *Yankee Metal Products Company v. District Court*, 528 P.2d 311 (Okl.1974). In the *Yankee*

*Metal Products* case, agents of Yankee Metal[8] called agents of Del City Wire Company (Del Wire) in Oklahoma to discuss the purchase of wire harnesses after seeing some direct mail advertisements of Del Wire. A large number of harnesses were ordered to be custom-built according to samples supplied to Del Wire by Yankee Metal. Upon their arrival in Connecticut, the harnesses were rejected by Yankee Metal as not meeting the requested specifications. Del Wire sued to collect in Oklahoma County District Court and Yankee Metal filed an action seeking a Writ of Prohibition in the Oklahoma Supreme Court. The Writ was denied as the Oklahoma Supreme Court held that although the contacts of Yankee Metal with Oklahoma were only through the mail and over the telephone, the supplying of specifications and samples made Yankee Metal an "active-purchaser" subject to the reach of Oklahoma's "long-arm" statutes.

Although the relationship of publisher-author may not compare strictly to that of buyer-seller, the extent of control and direction exercised in this case by the defendant over the completion and revision of the manuscript by the plaintiff, leading up to the contract upon which this suit is brought, places the defendant in a position relative to the State of Oklahoma that is closely analogous to that of an "active-purchaser". The relationship is clearly more closely akin to that of buyer-seller than to that of employer-employee.

It is the Court's conclusion that the defendant has directed sufficient activity to be conducted in Oklahoma, out of which contacts this action has arisen, that to sub-

---

4. *Fields v. Volkswagen of America, Inc.*, 555 P.2d 48 (Okl.1976); *Vacu-Maid, Inc. v. Covington*, 530 P.2d 137, at 141 (Okl.App.1974); *Vemco Plating, Inc. v. Denver Fire Clay Co.*, 496 P.2d 117 (Okl.1972) and *Marathon Battery Company v. Kilpatrick*, 418 P.2d 900 (Okl.1965).

5. *Geneva Industries, Inc. v. Copeland Construction Corp.*, 312 F.Supp. 186 (N.D.Ill.1970); *Oswalt Industries, Inc. v. Gilmore*, 297 F.Supp. 307 (D.Kan.1969); *Chassis-Trak, Inc. v. Federated Purchaser, Inc.*, 179 F.Supp. 780 (D.N.J.

1960); and *Architectural Bldg. Components Corp. v. Comfort*, 528 P.2d 307 (Okl.1974).

6. See *McQuay, Inc. v. Samuel Schlosberg, Inc.*, 321 F.Supp. 902 (D.Minn.1971).

7. *Whittaker Corporation v. United Aircraft Corporation*, 482 F.2d 1079 (1st Cir. 1973).

8. A New York corporation with its principal place of business in Connecticut with no significant contacts with Oklahoma other than the facts giving rise to the subject action.

ject the defendant to the jurisdiction of this Court would do no violence to our "traditional notions of fair play and substantial justice". Therefore, the defendant's Motion to Dismiss should be and is hereby overruled.

It is so ordered this 20th day of September, 1977.