MORRISON *v.* BLAND.

5-967                                    291 S. W. 2d 243

Opinion delivered June 4, 1956.

[Rehearing denied July 2, 1956.]

*Penix & Penix,* for appellant.

*Kirsch, Cathey & Brown,* for appellee.

SAM ROBINSON, Associate Justice. The issue here is whether the appellees, Robert P. Bland and his wife, Anna Lou Bland, are liable to appellant, Byrd Morrison, doing business as Byrd Morrison Lumber Company, for lumber supplied by Morrison on a contract between the Blands and R. C. Whitlow. In May 1955, the Blands were preparing to build a house in Paragould. A short time previously, Frank Schreit, Jr. had purchased some lumber from R. C. Whitlow, and recommended Whitlow to Robert P. Bland; in fact, Schreit introduced Bland to Whitlow. Whitlow tried to sell lumber to Bland at that time, but Bland was not ready to purchase, as his plans were not complete. Whitlow gave Bland his card, which reads: "Whitlow Lumber Company, Ronald C. Whitlow, Owner, P. O. Box 38, Alicia, Arkansas."

Some time later, Whitlow again called on Bland and represented to him that there was going to be an advance in the price of lumber, but if Bland would place his order at that time and pay part of the purchase price, he could get it at the price then prevailing. They made a deal on those terms, and on May 31, 1955, Bland made a check payable to R. C. Whitlow in the sum of $2,000.00. Whitlow gave Bland a receipt which stated that the order was to be given at the buyer's option. Whitlow's name was given as salesman and Robert P. Bland as pur-

chaser, and nothing on the receipt indicated that any other person or company was involved. Whitlow told Bland that he would make arrangements with the Inman Lumber Company to deliver the lumber. Whitlow did not own a lumber yard or have a stock of lumber; in order to carry out his contract with Bland, it was necessary for him to get some one else to supply the lumber. He contacted appellant Morrison, who agreed to furnish the material and pay Whitlow a percentage of the selling price. But, it was necessary for Morrison to obtain the lumber elsewhere as he had no lumber yard or stock of lumber.

Whitlow obtained specifications of the desired lumber from Bland, gave an order for it to Morrison, and stated in the order that Inman was to do the hauling. Morrison obtained the first load of lumber from the Sparkman Lumber Company, Sparkman, Arkansas; Inman picked it up at that place and delivered it to Bland, at Paragould, on July 8. At that time, it appeared that some of the lumber was not according to specifications; there were no 8 foot 2 x 4's, and, also, some of the lumber was No. 1 whereas No. 2 had been ordered. Bland attempted to get in touch with Whitlow, but was unsuccessful, and Inman suggested that he talk with Morrison, as the lumber was coming through Morrison. Bland did contact Morrison, and was told that he could cut the 16 foot 2 x 4's in half in order to make the desired 8 foot lumber, and that additional 16 foot pieces would be furnished later. Morrison also stated that the No. 1 lumber was charged out as No. 2, as they did not have the No. 2, but made no statement with reference to his arrangements with Whitlow about furnishing the lumber.

About five days later, on July 13, Bland received an invoice from Morrison stating that there was a 2% discount for payment in 10 days; also stamped on the face of the invoice was an assignment whereby the proceeds of the invoice were assigned to the Merchants and Planters Bank, in Camden, with the request that the remittance be made to the bank. On July 18, the second load of lumber was shipped, and a few days later the invoice for that load was sent by Morrison to Bland, with the

same notation as to the assignment. The two invoices came to $2,191.96; Bland sent Whitlow his check for the amount of the difference between the $2,191.96, less 2%, and the $2,000.00 previously paid Whitlow. Whitlow contacted Bland and told him that he (Bland) was not entitled to the 2% discount because theirs was a net transaction, and Bland gave Whitlow another check for the additional amount. The last of August, Morrison called on Bland for payment, and Bland stated he had already paid Whitlow. Morrison then filed a lien on the property where the lumber was used. On August 30, this suit was filed, asking judgment against Bland in the sum of $2,191.96 and foreclosure of the lien. There was a judgment for Bland; Morrison has appealed.

According to the undisputed testimony in the case, Whitlow was not Morrison's agent. In dealing with Bland, there was nothing done or said by Whitlow to lead Bland to believe that any one was involved in the transaction except the two people, Bland and Whitlow. In fact, according to the undisputed evidence, no one else was involved at the time of making the contract for the sale of the lumber. There is no contention that, at the time the contract was made, Bland knew anything about Morrison; Whitlow says he was acting for himself, and Morrison says that Whitlow had no authority to act for him. Therefore, according to the undisputed testimony, Whitlow was acting for himself, solely, at the time he made the contract to sell lumber to Bland. Later, Whitlow, without the knowledge or consent of Bland, entered into a contract with Morrison whereby Morrison would supply lumber to Bland. One load of lumber was hauled by Inman from the Fordyce Lumber Company, Fordyce, Arkansas; that company's tally sheet went with the lumber. It shows the name, Morrison, written in pencil in the upper left hand corner. The other load of lumber was hauled by Inman from the Sparkman Lumber Company, at Sparkman, Arkansas; the tally sheet sent with that load of lumber shows that the lumber was sold to Morrison, and shipped to Inman Lumber Company, Walnut Ridge, Arkansas. None of these tally sheets or in-

voices shows in any manner what arrangements Whitlow had made for obtaining the lumber.

Bland made a contract with Whitlow for the purchase of the lumber, and paid for it. Whitlow made a deal with Morrison to furnish the lumber; Morrison, in turn, contracted with the Sparkman Lumber Company and the Fordyce Lumber Company to supply the lumber, and Inman was employed by Whitlow to deliver the lumber. Had Bland suspected there was anything wrong about the transaction, he would have had more reason to believe that Inman was the actual owner of the lumber than that Morrison owned it. When he saw the lumber, it was in Inman's truck, in the process of being delivered. There were two loads, and there was a tally sheet with each load; one tally sheet showed that the lumber was shipped to Inman by the Sparkman Lumber Company, at Sparkman, and the other showed that the lumber came from the Fordyce Lumber Company, at Fordyce. Morrison is located at Camden; he had no contract with Bland; he never heard of Bland before he (Morrison) made a deal with Whitlow to furnish lumber to Bland. Morrison had dealt with Whitlow previously and knew that he was an unreliable person. According to Morrison, Whitlow had given bad checks for lumber on other occasions, and collected from other customers contrary to Morrison's orders; he collected from Schreit in exactly the same manner he collected from Bland. In all probability, Morrison actually got a large portion of the money paid by Bland, but, according to Whitlow's orders, it was credited to Schreit instead of to Bland.

At the time of the receipt of the invoices by Bland, he had already paid Whitlow practically all of the purchase price, only a small part being paid thereafter. Although after delivery of part of the lumber, Morrison talked with Bland about specifications, he did not tell Bland that he was looking to him for the money. Bland knew that Schreit had dealt with Whitlow in exactly the same manner as he (Bland) contracted with him, and there was no complaint by any one. It did not appear strange that Morrison came into the deal; so did the In-

man Lumber Company, Sparkman Lumber Company, and Fordyce Lumber Company. Morrison did not discuss the method of payment with Bland; neither did he ask Bland for any reference as to his credit nor did he make any investigation of Bland as a credit risk. Bland knew that he had paid for the lumber, and there was nothing to indicate to him that there was not a mutual agreement between Whitlow, Morrison, Sparkman Lumber Company, Fordyce Lumber Company and Inman Lumber Company as to the delivery of the lumber. The invoices did not constitute a contract. In *Garner Manufacturing Company* v. *Cornelius Lumber Company,* 165 Ark. 119, 262 S. W. 1011, the court said, in quoting from the Supreme Court of the United States: " 'An invoice is not a bill of sale, nor is it evidence of a sale. It is a mere detailed statement of the nature, quantity and cost or price of the things invoiced, and it is as appropriate to a bailment as it is to a sale; hence, standing alone, it is never regarded as an evidence of title.' *Dows* v. *National Exchange Bank;* 91 U. S. 618-630, 23 L. Ed. 214; *Sturm* v. *Boker,* 150 U. S. 312-328. To be sure, the invoice was relevant testimony to be considered in determining what the contract was between the parties, but it of itself did not constitute a contract.''

If Morrison was an undisclosed principal and Whitlow was the agent, Morrison cannot recover because Bland could assert every defense against the unknown principal that he could against the agent. *Frazier* v. *Poindexter,* 78 Ark. 241, 95 S. W. 464. Morrison says, however, that Whitlow was not his agent, but was his broker. A broker is an agent. *Ballentine's Law Dictionary, Second Edition Page 174; 5 Words and Phrases 828.* Whitlow could not act as an agent for Morrison without Morrison's consent; *Restatement-Agency, § 15;* and, according to Morrison, Whitlow had no authority to act for him or use his name in any manner whatsoever. Morrison was not bound by anything that Whitlow did. Although the purchase price was paid, Bland would have no cause of action against Morrison if the lumber had not been supplied. Neither is Bland liable to Morrison on any contract, and he is not liable on a *quantum meruit* basis

because the lumber was supplied on a contract with Whitlow, and Morrison is not a party to that contract. *Stevens* v. *Owen,* 220 Ark. 196, 246 S. W. 2d 728.

It is agreed that Bland owes the sales tax to some one. From the record it appears that Morrison has paid the tax to the State, hence, according to equitable principles, Bland should reimburse Morrison for the sales tax paid. With this modification, the decree is affirmed.

Mr. Justice WARD dissents.

PAUL WARD, Associate Justice, dissenting. My reasons for disagreeing with the majority opinion are set out below.

1. The undisputed facts are: That Morrison shipped to Bland lumber valued at $2191.96. That Bland accepted and used the lumber; That Morrison has received not one cent for his lumber; That Bland had previously paid Whitlow $2000.00 for some lumber; That Whitlow was not the agent of Morrison, and; That Bland did not deal with Whitlow as an agent of any one.

2. The inevitable result is that Bland or Morrison must lose $2191.96, or some portion thereof.

3. It is a well established principle of law and equity that when one of two innocent parties must suffer because of a mistake, the one more responsible for the mistake, or the one who had the better opportunity to prevent the mistake must be the loser.

In my opinion the undisputed testimony in this case shows that Bland was the one who had the opportunity to prevent the miscarriage of justice, as shown by the following:

(a) When the first load of lumber was shipped to Bland on July 8, the tally sheet which went along with the lumber had nothing on it to show that the lumber was coming from Whitlow, but it did have on it the name of Morrison; (b) When the first load of lumber was received by Bland and part of it was not according to specifications, he was told to and he did talk with Mor-

rison about the lumber, and Morrison assured him that the defects would be supplied; (c) On July 13 Bland received an invoice from Morrison (not Whitlow) stating that he (Bland) was entitled to a 2 per cent discount *when he paid* for the lumber, and the invoice also directed Bland to pay the money to the Merchants and Planters Bank in Camden. Bland must have known that these directions were incompatible with the fact that he had already paid for the lumber; (d) A few days later Bland received the second load of lumber from the Sparkman Lumber Company with a tally sheet showing that the lumber had been sold to Morrison (not Whitlow).

In my judgment any one of the above enumerated incidents was sufficient and certainly all of them were more than sufficient, to have called to Bland's attention that something was wrong, and placed upon him the burden and obligation of making inquiry. This he did not do. The above is most significant in view of the fact that there is no contention that Morrison did anything to mislead Bland. The record discloses no fact or incident which was calculated to arouse suspicion that Bland had already paid Whitlow for the lumber.

Under the above stated factual situation, the decisions of this court make it clear that this case should be reversed and that Morrison should have judgment for his lumber. In the case of *Kellogg-Fontaine Lumber Co., Inc.* v. *Cronic*, 219 Ark. 170, 240 S. W. 2d 872, the question presented was whether a notation on a check was sufficient to put the payee on notice of certain existing facts, and this court approved this statement: " 'This court is committed to the doctrine that notice of facts which would put a man of ordinary intelligence on inquiry is equivalent to knowledge of all of the facts that a reasonably diligent inquiry would disclose.' " It was also there said that the same principle of law had been announced many times by this court. In the case of *Trinity Royalty, Inc.* v. *Riggins,* 199 Ark. 939, 136 S. W. 2d 473, the question was whether appellant, in buying an undivided interest in oil, gas and other minerals, did

so without notice that appellee had previously purchased the same interest. In dealing with this question the court made the same statement as quoted above.

When Morrison notified Bland that he was to pay for the lumber by sending his check to the Merchants and Planters Bank at Camden, Bland of course knew at the time that he had already paid Whitlow for the lumber. Certainly this was sufficient to put Bland on notice that something was wrong. If Bland, at that time, had merely told Morrison that he had already paid for the lumber in advance (to Whitlow) Morrison would have had an opportunity to protect himself and he certainly would not have shipped Bland the second load of lumber knowing that he would not receive any money therefor.