Leslie NIX *v.* W. B. DUNAVANT, Jr.
d/b/a W. B. Dunavant & Company

5-5403                                    460 S. W. 2d 762

Opinion delivered December 14, 1970

*Shaver & Shaver,* for appellant.

*Armstrong, Allen, Brandon, Goodman, McBride & Prewitt,* Memphis, Tenn., and *Rieves & Rieves,* for appellee.

GEORGE ROSE SMITH, Justice. This action was brought by the appellant, Leslie Nix, a resident of Cross County, Arkansas, to recover $9,976 as damages for breach of contract. The defendant, W. B. Dunavant, Jr., a resident of Memphis, Tennessee, appeared specially and moved to quash the service of process, on the ground that he is not subject to suit in Arkansas. The motion was submitted to the trial court upon an affidavit and a counter-affidavit. This appeal is from an order sustaining the motion to quash and dismissing the suit.

The Uniform Interstate and International Procedure Act provides that a court may exercise personal jurisdiction over a person as to a cause of action arising from that person's "transacting any business in this State." Ark. Stat. Ann. § 27-2502 (Supp. 1969). In construing the statute liberally we have pointed out that the "transaction of any business" is not synonymous with the earlier restrictive term, "doing business." *Wichman* v. *Hughes*, 248 Ark. 121, 450 S. W. 2d 294 (1970). To the contrary, the purpose of the Uniform Act was to expand the state's personal jurisdiction over non-residents, within the limits permitted by due process of law. In Professor Leflar's words: "Plaintiffs ought ordinarily to be entitled to try their cases where the facts occurred, where witnesses reside and the local law is to be applied. This is in keeping with the 'fair play and substantial justice' standard that the *International Shoe* case [*International Shoe Co.* v. *Washington,* 326 U. S. 310 (1945)] laid down." Leflar, American Conflicts Law, § 41 (1968).

According to Nix's complaint and counter-affidavit, Dunavant is engaged in the business of buying cotton. In December, 1967, Dunavant, acting through Brian Kelley, a resident of Earle, in Crittenden County, Arkansas, negotiated a contract for the purchase of Nix's three-quarters share of the cotton to be produced by him on 475 acres in Cross County. All the negotiations took place in Arkansas. Kelley also obtained for Dunavant similar contracts from five other Cross County farmers. Kelley was paid by Dunavant for obtaining the contracts.

The contract itself was typed on Dunavant's letterhead. Dunavant agrees in the contract to buy the cotton at a stated price per pound. The contract excludes some cotton, such as that below certain grades. It requires that all cotton eligible under the contract be hand or spindle picked. Nix agrees to practice good farming methods in producing and harvesting the crop, to defoliate before machine picking, and to harvest and gin the crop as fast as practicable after maturity. Dunavant has the privilege of controlling the heat and cleaning

equipment used in ginning the cotton. The cotton is to be delivered to a specified compress warehouse in Cross County, with samples being sent to Dunavant.

The complaint alleges that Nix complied with the contract in producing, defoliating, spindle picking, and ginning the crop. Dunavant is charged with having wrongfully breached the contract by refusing to purchase and pay for the cotton in accordance with the agreement.

Dunavant's brief affidavit in support of his motion to quash contradicts hardly any of the facts asserted by Nix. Dunavant asserts that neither he nor his company, a partnership, owns any property, maintains any office, or has any agents in Arkansas. We quote the pivotal paragraph in the affidavit:

> That the contract which is the basis of this suit was executed in the City of Memphis, Tennessee, by W. B. Dunavant & Co. and was negotiated in the first instance by Brian Kelley, who was an independent cotton broker and merchant in Earle, Arkansas, and who did business as such with W. B. Dunavant & Co., and presumably with other persons and firms who were engaged in the same or similar businesses.

The motion to quash the service of course admits such assertions of fact in the complaint as are not controverted by the motion. Moreover, the burden is on the moving party to produce evidence to sustain the allegations of the motion. *Running* v. *Southwest Freight Lines,* 227 Ark. 839, 303 S. W. 2d 578 (1957). Tested by that rule, we find Dunavant's affidavit insufficient to sustain his motion.

The only point of fact that might be said to be controverted is whether Brian Kelley acted as Dunavant's agent. Nix asserts positively that Kelley was in fact Dunavant's agent or broker. He asserts that Kelley "met with Plaintiff and other cotton producers in Cross

County and outlined the terms of the contract and whom it was with." The contract, which was presented by Kelley for Nix's signature, was typed on Dunavant's stationery. Nix also states that Kelley was paid by Dunavant for obtaining the contracts.

None of those statements are actually denied by Dunavant's affidavit. He merely alleges, as a conclusion of law, that Kelley was "an independent cotton broker and merchant." A broker, however, is ordinarily the agent of the person who pays him. *Morrison* v. *Bland,* 226 Ark. 514, 291 S. W. 2d 243 (1956); Bouvier's Law Dictionary (8th ed., 1914). Kelley certainly was not representing both parties in negotiating the terms of the contract. Thus it is actually an undisputed fact that Dunavant, acting through his agent, negotiated the agreement in Arkansas. There is, as we have said, no other point of fact even ostensibly in controversy.

We have said that "a person who avails himself of the privilege of conducting activities in another state is subject to suit there if his contracts in -that state have been such that the maintenance of the suit would not offend traditional notions of fair play and substantial justice." *Wichman* v. *Hughes, supra.* With specific reference to contracts, Leflar states: "A number of cases have presented the question whether the making of a contract in the state suffices to sustain the state's jurisdiction in causes of action arising out of the contract. If local completion of the contract were by happenstance merely, as between parties who were airline passengers flying over the state, with no other local contacts in the transaction, the answer would be negative. The substantiality of contracts should not be so mechanically measured. But if the contract was made in *F* by deliberate choice as a place of contracting, or because that was where the contemplated transaction was centered, or because the contract was to be performed there, the contracts are substantial." Leflar, *supra,* § 43. Moreover, even though, as here, the final execution of the agreement takes place outside the state, the necessary contracts may be found to exist if the contract is to be

performed here. Woods, The Uniform Long-Arm Act in Arkansas, 22 Ark. L. Rev. 627, 633 (1969).

Here the necessary contacts with Arkansas were far beyond the minimum required by due process. Dunavant negotiated the agreement through his paid agent in Arkansas. The contract involved an Arkansas crop to be produced on Arkansas land. The grower was required to conform to exact specifications in the production, harvesting, and ginning of the crop, all of which were to take place in Arkansas. Dunavant reserved the privilege of controlling the heat and cleaning equipment to be used in ginning—activities for his own protection that had to be performed in Arkansas. When ginned, the cotton was to be delivered to a warehouse in Arkansas.

By contrast, the contract has hardly any connection with the state of Tennessee. Dunavant lives there. He signed his name there. The samples and warehouse receipts are to be sent there. That is all. Upon the record we have no hesitancy in reaching the conclusion that Dunavant is fairly and lawfully subject to suit in this state for breach of contract.

Reversed.

FOGLEMAN and JONES, JJ., dissent.

JOHN A. FOGLEMAN, Justice, dissenting. I disagree with the majority because I think that there was substantial evidence to support the findings of the trial judge:

Appellee alleged that he did not, at any time material, transact any business in this state or contract to supply services or things in this state and was not subject to service of process.

Whenever the trial judge decides any fact question, in a law case, either interlocutory or preliminary to trial, his decision will be sustained on appeal if there is

any substantial evidence to support it. *Rome* v. *Ahlert,* 231 Ark. 844, 332 S. W. 2d 809. Whenever the law makes a circuit judge the trier of the facts, the same presumption attends his finding as when a jury is waived by the parties, and when the finding is sustained by substantial evidence it is conclusive on appeal. *Cady* v. *Pack,* 135 Ark. 445, 205 S. W. 819; *Creekmore* v. *Scott,* 179 Ark. 1113, 20 S. W. 2d 177; *Little River County* v. *Buron,* 165 Ark. 535, 265 S. W. 61; *Matthews* v. *Clay County,* 125 Ark. 136, 188 S. W. 564.

The principal issue before the court was whether appellee was transacting business in the state in the sense of Ark. Stat. Ann. § 27-2502 C 1 (A) (Supp. 1969). The only evidence before the court was the affidavits of the respective parties. Neither party objected to this procedure or to the admissibility of any statement in the affidavit of the other. If conclusions were stated, they were entitled to be considered as evidence in the absence of objection. *Nelson* v. *Busby,* 246 Ark. 247, 437 S. W. 2d 799; *Insured Lloyds* v. *Mayo,* 244 Ark. 802, 427 S. W. 2d 164; *Judy* v. *McDaniel,* 247 Ark. 409, 445 S. W. 2d 722.

Pertinent parts of appellee's affidavit were:

1. My name is W. B. Dunavant, Jr. I am an individual residing in Memphis, Shelby County, Tennessee, and I am a member of the firm of W. B. Dunavant & Co. which does a cotton business in the City of Memphis, Shelby County, Tennessee. Said firm is a partnership composed of W. B. Dunavant, Jr., and others and has been engaged in the business of buying and selling cotton in the City of Memphis, Tennessee, since the year 1960. That this defendant has no independent business of his own nor does he engage in the cotton business as a proprietor of W. B. Dunavant & Co.

2. That neither W. B. Dunavant, Jr., nor W. B. Dunavant & Co., a partnership, have an interest in, use, or possess real property in the State of Arkan-

sas nor did they, during the times pertinent to the motion in question.

3. That the contract which is the basis of this suit was executed in the City of Memphis, Tennessee, by W. B. Dunavant & Co. and was negotiated in the first instance by Brian Kelley, who was an independent cotton broker and merchant in Earle, Arkansas, and who did business as such with W. B. Dunavant & Co. and presumably with other persons and firms who were engaged in the same or similar businesses.

4. That neither affiant nor W. B. Dunavant & Co., a partnership, maintain any offices in the State of Arkansas, nor do they have any agents in the State of Arkansas, nor did they have any offices or agents at any time or times material to this motion.

While the allegations of this affidavit were controverted by appellant's affidavit, the trial judge was confronted with conflicting evidence as to the status of Kelley. If he accepted Dunavant's version Kelley acted as an independent broker in negotiating with Arkansas farmers, and not as an agent of Dunavant, who said he had no agents in Arkansas at any time material to the motion. I consider this affidavit to be substantial evidence of the facts therein stated so that we cannot say that appellee was transacting any business in this state through Kelley. The facts that Kelley was compensated by Dunavant after the contracts were entered into and that Kelley, after having negotiated with the Arkansas farmers, presented them with contracts on Dunavant's stationery are merely evidence of agency, but not necessarily controlling on the fact question.

We made it quite clear in *Tomlinson Chair Mf. Co. v. Jop-Pa Mattress Co.*, 122 Ark. 566, 184 S. W. 32, that a broker who was not an employee of a wholesaler of merchandise, but who negotiated sales between the wholesalers and merchants, receiving compensation from the wholesaler by way of commission, and who dealt

with other wholesalers, giving orders to whichever one he deemed proper, was not the agent of the wholesaler.[1]

I agree that the test for transacting business in the state under the Interstate and International Procedure Act is far different from the "doing business" test of earlier statutes. Yet, when the actions of Kelley are eliminated, I cannot see how it can be said that Dunavant was either transacting business in Arkansas or contracting to supply services or things in Arkansas. The contract was presented to and signed by Dunavant in Tennessee. It became a Tennessee contract. *Goode* v. *Universal Plastics, Inc.*, 247 Ark. 442, 445 S. W. 2d 893. Dunavant did absolutely nothing in Arkansas and did not contract to do anything in Arkansas. Appellant relies upon the fact that the cotton to be bought by Dunavant was to be planted, produced, ginned and delivered in Arkansas. Yet none of this was to be done by Dunavant, and the "delivery" would be to the Federal Compress and Warehouse Company's warehouse in Wynne, not to Dunavant. The samples were to be delivered to Dunavant in Memphis, Tennessee. Dunavant was to be billed upon warehouse receipts issued for this cotton.

The "long-arm" act should be liberally construed. The Commissioners' note stated that it should be given the same expansive interpretation intended by the draftsman of the Illinois act and given by the courts of that state. I agree, but I do not believe that the courts of Illinois would give the act the same expansive application as the court is giving here. See *Grobark* v. *Addo Machine Co.*, 18 Ill. App. 2d 10, 151 N. E. 2d 425, aff'd 16 Ill. 2d 426, 158 N. E. 2d 73 (1959); *Orton* v. *Woods Oil & Gas Co.*, 249 F. 2d 198 (7th Cir. 1957); *Saletko* v. *Willys Motors Co., Inc.*, 36 Ill. App. 2d 7, 183 N. E. 2d 569 (1962); *Tommills Brokerage Company* v. *Loeb, Rhoades & Company*, 411 F. 2d 764 (7th Cir. 1969). I also doubt the establishment of the requisite "minimal contacts."

---

[1]The question was raised by the wholesaler by asserting that the broker had no authority to employ subagents.

I would affirm the judgment.

I am authorized to state that JONES, J., joins in this dissent.