George SZALAY *v.* Oscar L. HANDCOCK and Keystone
Insurance Company

91-61                                    819 S.W.2d 684

Supreme Court of Arkansas
Opinion delivered November 11, 1991
[Rehearing denied December 16, 1991.]

*Hixson, Cleveland & Rush*, by: *David L. Rush*, for appellant.

*Daily, West, Core, Coffman & Canfield*, by: *Eldon F. Coffman* and *Douglas M. Carson*, for appellee.

DONALD L. CORBIN, Justice. The question presented by this appeal is whether an Arkansas court has authority under the Arkansas long-arm statute, Ark. Code Ann. § 16-4-101 (1987), and the due process clause, U.S. Const. amend. 14, to exercise jurisdiction over a foreign insurance company in a suit by the insured to recover under the insurance policy's uninsured motorist clause for damages arising out of an accident in Arkansas with an uninsured Arkansas motorist.

On May 9, 1989, appellant George Szalay, then a resident of New Jersey, renewed his automobile insurance policy with appellee, Keystone Insurance Company (Keystone), a Pennsylvania corporation doing business in New Jersey. The policy contained an uninsured motorist clause which provided in relevant part:

PART C — UNINSURED MOTORIST COVERAGE — Insuring Agreement

We will pay damages which a covered person is legally entitled to recover from the owner or operator of an

uninsured motor vehicle because of bodily injury:

1. Sustained by a covered person; and

2. Caused by an accident.

PART F — GENERAL PROVISIONS — Policy Period and Territory

This policy applies only to accidents and losses which occur:

1. During the policy period as shown in the Declarations; and

2. *Within the policy territory.*

*The policy territory is:*

1. *The United States of America*, its territories or possessions[.] [Emphasis supplied.]

Appellant moved to Fort Smith, Arkansas, in May of 1989 to pursue an employment opportunity in Shady Point, Oklahoma. He signed a six month lease to rent an unfurnished apartment in Fort Smith. Appellant's wife stayed in the New Jersey apartment, and appellant rented furniture to use while in Arkansas. On June 16, 1989, defendant Oscar L. Handcock, struck appellant while appellant was riding his bicycle in Fort Smith. Appellant sued defendant Handcock in a Fort Smith Circuit Court to recover for his alleged injuries. Appellant subsequently amended his complaint to allege that defendant Handcock was an uninsured motorist and to join Keystone Insurance Company as a party defendant. Appellee Keystone filed an answer asserting that Arkansas lacked personal jurisdiction over Keystone. Keystone is not authorized to do business in our state, and the company has no office, employee, or agent in Arkansas. The company also does not advertise or otherwise solicit business in Arkansas.

The trial court granted Keystone's motion to dismiss for lack of jurisdiction, and entered a final judgment as to appellee Keystone pursuant to Rule 54 of the Ark. R. Civ. P. We take jurisdiction under Rule 29(1)(c) of the Rules of the Supreme Court which provides that this court has jurisdiction in cases implicating the interpretation or constitutionality of our state

statutes. In this case, we are concerned with whether the trial court was correct in interpreting the Arkansas long-arm statute to forbid the exercise of jurisdiction over appellee Keystone. We reverse and remand.

To determine whether a court has *in personam* jurisdiction over a non-resident defendant, we must undertake a two-part analysis. First, we must determine whether the non-resident defendant's actions satisfy the requirements of section 16-4-101(C) of the long-arm statute. Second, we consider whether the exercise of *in personam* jurisdiction is consistent with due process. *Capps* v. *Roll Serv. Inc.*, 31 Ark. App. 48, 787 S.W.2d 694 (1990).

Ark. Code Ann. § 16-4-101(C)(1) (1987) provides in part:

1.   A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a (cause of action) (claim for relief) arising from the person's:

(a)   Transacting any business in this state;

(b)   Contracting to supply services or things in this state;

. . . .

2.   When jurisdiction over a person is based solely upon this section, only a (cause of action) (claim for relief) arising from acts enumerated in this section may be asserted against him.

Ark. Code Ann. § 23-60-102(13) (1987) provides, " 'Transact' with respect to insurance includes any of the following: (D) Transaction of matters subsequent to effectuation of a contract of insurance and arising out of it[.]" In the instant case, appellant Szalay is suing Keystone to enforce his contractual right to uninsured motorist coverage. Appellant's enforcement action arises out of Keystone's explicit contractual promise to provide uninsured motorist coverage. While the parties entered this contract in New Jersey, the accident implicating Keystone's contractual obligation occurred in Arkansas. Given the insurance code's broad definition of "transact," we believe the legislature intended the "transacting business" provision of the long-arm statute to encompass an insured's attempts to enforce contractual

rights.

We have stated that the purpose of the "transacting business" provision is to permit Arkansas courts to exercise the maximum *in personam* jurisdiction allowable by due process. *CDI Contractors, Inc.* v. *Goff Steel Erectors, Inc.*, 301 Ark. 311, 783 S.W.2d 846 (1990). We therefore consider whether the exercise of jurisdiction over appellee Keystone is consistent with due process.

■ The United States Supreme Court has held that due process prohibits a state's court from exercising personal jurisdiction over a non-resident defendant unless the defendant has sufficient "minimum contacts" with the forum state. *International Shoe Co.* v. *Washington*, 326 U.S. 310, 316 (1945). This rule does not afford us the luxury of applying a mechanical test. Leflar, *American Conflicts of Law* § 21. However, several settled principles guide us in answering our "minimum contacts" inquiry.

■ First, the defendant must "purposefully avail itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson* v. *Denckla*, 357 U.S. 235, 253 (1958). The Supreme Court has held that the "minimum contacts" standard is not met when a defendant's product merely winds up in a forum state solely as the result of the unilateral activity of one seeking to claim some relationship with the defendant. *Burger King Corp.* v. *Rudzewicz*, 471 U.S. 462 (1985); *Hanson, supra.* While a defendant might have foreseen that his product would end up in the forum state, foreseeability alone will not satisfy the "minimum contacts" test:

> [T]he foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.

*World-Wide Volkswagen Corp.* v. *Woodson*, 444 U.S. 286, 297 (1980).

Appellee Keystone relies on *World-Wide Volkswagen* in

arguing that Keystone did not purposefully avail itself of the privilege of doing business in Arkansas. Keystone contends that because it neither solicited business nor maintained an agent in Arkansas, it could not reasonably anticipate being haled into court here. We disagree.

Appellant's insurance policy contained a provision stating that the policy applied only to accidents and losses occurring within the policy territory. The policy explicitly defined the policy territory as "the United States of America, its territories or possessions." Both the Fourth and Ninth Circuits have upheld jurisdiction over insurance companies in analagous situations. *See Farmers Ins. Ex.* v. *Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911 (9th Cir. 1990); *Rossman* v. *State Farm Mut. Auto Ins. Co.*, 832 F.2d 282 (4th Cir. 1987); *August* v. *HBA Life Ins. Co.*, 734 F.2d 168 (4th Cir. 1984). We find the reasoning in these cases to be persuasive. The defendant insurance companies in the aforementioned cases also relied on *World-Wide Volkswagen* in arguing that they could not reasonably anticipate being haled into court in the forum state. However, the courts distinguished the business of manufacturing products to be placed in the stream of commerce from the business of selling insurance policies with nationwide territorial clauses. "Insurance by its nature involves the assertion of claims, and resort to litigation is often necessary." *August, supra*, at 172. Furthermore, an automobile liability policy is typically sued on where the accident takes place. *Rossman, supra.* The courts concluded that insurance companies that contract to provide nationwide automobile liability coverage should reasonably anticipate being haled into the courts of a state where an accident occurs.

The Fourth Circuit reasoned that the insurance companies purposefully availed themselves of the privilege of doing business in the forum states by contracting to provide coverage for claims arising within policy territories that encompassed the entire United States:

> In *World-Wide Volkswagen*, nothing about the defend-
> ant's conduct indicated its willingness to be called into
> court in the foreign forum. Its only connection with
> Oklahoma was the result of the plaintiffs' unilateral act of
> driving the car there. By contrast, [the insurance com-

pany's] expectation of being haled into court in a foreign state is an express feature of its policy.

*Rossman, supra,* at 286.

■ In the instant case, Keystone's territorial policy limit included Arkansas within its scope. Unlike automobile sellers and product manufacturers, insurance companies such as Keystone can control their amenability to suit by excluding certain states from the "policy territory" defined in the policy. *See Rossman, supra.* By not excluding any states in its definition of "policy territory," Keystone purposefully contracted to fulfill its obligation of providing uninsured motorist coverage in foreign states such as Arkansas. Accordingly, we find that the contractual definition of the policy territory satisfies the purposeful availment prong of the "minimum contacts" inquiry.[1]

■ Due process also requires that a defendant's "minimum contacts" with the forum state be such that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *International Shoe,* 326 U.S. at 316, (quoting *Milliken* v. *Meyer,* 311 U.S. 457, 463 (1940)). This inquiry examines the reasonableness of suit in the forum state. *Asahi Metal Indus. Co., Ltd.* v. *Superior Court,* 480 U.S. 102 (1987).

■ The Supreme Court has held that in cases where a defendant has purposefully availed himself of conducting business in the forum state "it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." *Burger King,* 471 U.S. at 476. In this case, we find that appellee Keystone purposefully availed itself of the privilege of conducting business in Arkansas by contracting to extend appellant's coverage throughout the United States. Given this finding, Arkansas' exercise of jurisdiction over a suit arising out of this

---

[1] Our reasoning today would also support *in personam* jurisdiction under the "contract" provision of the Arkansas long-arm statute. Ark. Code Ann. § 16-4-401(c)(1)(b) (1987) provides that an Arkansas court may exercise jurisdiction over a cause of action arising from the defendant's contracting to supply services or things in this state. In the instant case, appellant challenges the trial court's ruling under the "transacting business" provision of the long-arm statute. His challenge is proper since the Commentary to the long-arm statute recognizes that situations will arise where a jurisdictional basis may be found under more than one subdivision of the statute.

purposeful availment is presumptively reasonable.

We do not believe appellee Keystone can overcome this presumption of reasonableness. Arkansas has a manifest interest in providing its residents with a forum when insurers refuse to pay claims. "These residents would be at a severe disadvantage if they were forced to follow the insurance company to a distant State in order to hold it legally accountable." *McGee* v. *International Life Ins. Co.*, 355 U.S. 220, 223 (1957). In this case, appellant Szalay has moved back to New Jersey since instituting his Arkansas suit. However, only contacts occurring prior to the event causing the litigation may be considered. *Steel* v. *United States*, 813 F.2d 1545 (9th Cir. 1987).

█ In this case, appellant was residing in Arkansas when he asserted his contractual rights under the uninsured motorist clause of his policy. It is reasonable to require insurance companies such as appellee Keystone to submit to the burdens of litigating this claim in Arkansas since it expressly contracted to extend appellant's policy coverage to a territory including Arkansas.

Accordingly, we reverse the trial court's dismissal and remand based on our holding that sufficient "minimum contacts" exist under both the long-arm statute and the due process clause to assert personal jurisdiction over appellee Keystone.

HOLT, C.J., DUDLEY and NEWBERN, JJ., dissent.

DAVID NEWBERN, Justice, dissenting. In spite of its recognition that both the provisions of Ark. Code Ann. § 16-4-101(C)(1) (1987) and the due process "minimum contacts" test must be satisfied, the Court's opinion holds that the statutory requirement is satisfied because it does not violate the Constitution to subject Keystone Insurance Company to personal jurisdiction in Arkansas.

Keystone transacted no business in Arkansas, thus § 16-4-101(C)(1)(a) does not apply. A separate subsection of the long-arm statute permits *in personam* jurisdiction to be exercised of a party "contracting to supply services . . . in this state . . . ." § 16-4-101(C)(1)(b). That subsection is not at issue here because Mr. Szalay's sole statutory argument for reversal is that this case arose out of Keystone's "transacting business" in

Arkansas.

If the definitions found in the Arkansas Insurance Code are relevant, they show the General Assembly did not define "Transact" there in a way that includes anything done by Keystone in this State. Arkansas Code Ann. § 23-60-102(13) (1987) is as follows:

> "Transact" with respect to insurance includes any of the following:
>
> (A) Solicitation and inducement;
>
> (B) Preliminary negotiations;
>
> (C) Effectuation of a contract of insurance;
>
> (D) Transaction of matters subsequent to effectuation of a contract of insurance and arising out of it[.]

There is no evidence whatsoever that Keystone solicited, negotiated, entered, or corresponded with Szalay about the policy or billed him for premiums here.

The Court's opinion is correct in stating that the Due Process Clause would not prohibit the exercise of jurisdiction of an insurance company which could anticipate litigation in this State by virtue of having agreed to protect its insured with respect to accidents which occur here. It is incorrect, however, to base a holding that the long-arm statute is satisfied because it would not be unconstitutional to assert personal jurisdiction of Keystone.

This Court has not held that the words of the Statute may be ignored if the Constitution is satisfied, and it should not do so now. The basis of the transition from statute to Constitution in the Court's opinion is an *obiter dictum* from *CDI Contractors, Inc.* v. *Goff Steel Erectors, Inc.*, 301 Ark. 311, 783 S.W.2d 846 (1990). In that case we wrote, "The purpose of this section [16-4-101(C)(1)] is to permit Arkansas courts to exercise the maximum in personam jurisdiction allowable by due process. *Martin* v. *Kelley Elec. Co.*, 371 F.Supp. 1225 (E.D. Ark. 1974); *SD Leasing, Inc.* v. *Al Spain & Assoc., Inc.*, 277 Ark. 178, 640 S.W.2d 451 (1982)."

In the *CDI* case we held that mail and telephone contacts

which occurred in Arkansas between parties to a contract were insufficient to satisfy the due process requirement. We did not discuss whether the long-arm statute was satisfied.

In the *Martin* case, the U.S. District Court stated the purpose of the long-arm statute "was to permit courts in Arkansas, . . . to exercise *in personam* jurisdiction to the furthest limits permitted by due process of law, and that the statute is to be liberally construed." The holding, however, was that the statute requires that the actions sued upon "arise out of" the activities which constitute the minimum contacts with this State. The complaint was dismissed for lack of *in personam* jurisdiction; the statutory requirement had not been met.

In the *SD Leasing* case we did not state that the long-arm statute permits whatever jurisdiction the Constitution permits. Rather, we stated, "We have held that the purpose of this statute is to expand our state's personal jurisdiction over nonresidents, *within the limits* permitted by the due process clause of the United States Constitution. *Nix* v. *Dunavant*, 249 Ark. 641, 460 S.W.2d 762 (1970). [Emphasis supplied.]" We may have meant "to the extent of the limits," but we did not say it. Even if that were the interpretation to be given the *SD Leasing* opinion, however, the holding of that case was that the statute was satisfied because of several acts of the defendant in this State, including the fact that the contract was not effectuated until it was approved here. That is also true of the *Nix* case where we found the statute satisfied by the negotiation of a contract in Arkansas.

Again, the important issue in this case is not whether the Constitution would be violated by permitting Keystone to be sued in Arkansas on its policy. Not only would it not be unconstitutional, but it would make good sense to permit it because, in the language of § 16-4-101(C)(1)(b), Keystone has agreed to provide a "service" in this State in the form of insurance coverage. Presumably the witnesses to the accident are here and Arkansas law would apply at least to some aspects of the case. The problem is that this decision ignores the very words of the statute on which it must be based. To hold that Keystone has transacted business in this State from which this cause of action has arisen is a bald fiction unsupported by any authority whatever.

I respectfully dissent.

HOLT, C.J., and DUDLEY, J., join in this dissent.